539 So.2d 665 (1989)
Herman J. MALCOMBE, Plaintiff-Appellant,
v.
Ronald LeBLANC, Deceased represented herein by duly appointed Administratrix, Lorraine LeBLANC, Jules LeBlanc and Commerce and Energy Bank of Lafayette, Defendants-Appellees.
No. 87-1161.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
*666 Voorhies & Labbe, Michael D. Hebert, Lafayette, for plaintiff/appellant.
Ballin & Hoffman, Robert B. Hoffman, Jr., New Orleans, Durio, McGoffin & Stagg, Gary McGoffin, Tama Blanchard, Lafayette, for defendants/appellees.
Before GUIDRY, KNOLL and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in granting a motion for summary judgment in favor of one of the defendants in the suit.
Herman J. Malcombe (hereinafter plaintiff) filed suit against Roland and Jules LeBlanc (hereinafter defendants) to compel the specific performance of a written agreement entered into between the parties.
Defendants appeared and excepted to the suit on the basis that Commerce and Energy Bank of Lafayette (hereinafter the Bank) was a necessary and indispensable party to the suit and that a complete adjudication of the controversy could not be reached unless it was joined. Plaintiff then filed a first amended and supplemental petition naming the Bank as an additional defendant in the lawsuit.
The Bank filed a motion for summary judgment alleging there was no issue as to material fact and that it was entitled to judgment as a matter of law. The trial judge granted the Bank's motion for summary judgment and dismissed plaintiff's suit against it. A formal written judgment was signed. Plaintiff timely filed a devolutive appeal. Because we find there exists an issue of material fact, we reverse and remand for further proceedings.

FACTS
The Lafayette Health Club, located in Lafayette, Louisiana, is owned by Lafayette Health Club, Inc. (hereinafter "LHC") and Cousins Unlimited Partnership (hereinafter Cousins). Plaintiff and the LeBlanc defendants are the sole stockholders in LHC and together comprise the partners in the Cousins partnership.
Cousins executed a promissory note on June 24, 1984 made payable on demand to the order of the Bank in the amount of $1,090,737.82. As security for payment of this note, plaintiff executed a Collateral Pledge Agreement and an Assignment of Certificate of Deposit by which he pledged to the Bank a $200,000.00 certificate of *667 deposit (hereinafter the CD) which he owned.
On June 10, 1985, the Bank offset a portion of the principal owed on the Cousins' note by applying the $200,000.00 face amount of plaintiff's CD and $815.04 of accrued interest earned by the CD to the debt of the Cousins' partnership.
In order to prevent a demand for payment of the remaining balance, and execution by the Bank on the other security pledged, plaintiff and the LeBlanc defendants entered into a certain act of subrogation (hereinafter the agreement) on July 15, 1985. The subrogation provides in pertinent part as follows:

"3.
Herman J. Malcombe does hereby agree to the following:
(A) To subordinate his partnership interest in COUSINS and his stock interest in LHC to Roland C. LeBlanc and Jules F. LeBlanc but retains ownership of the partnership interest and stock interest described above. The right to the management or the control of LHC or COUSINS which had previously vested in Herman J. Malcombe by virtue of his stock or partnership interest shall be subordinated to the interest of Roland C. LeBlanc and Jules F. LeBlanc.
(B) To resign as Managing Partner of Cousins.
(C) To resign as Secretary-Treasurer and Agent for Service of Process of LHC.
(D) To consent to the actions of Roland C. LeBlanc and Jules F. LeBlanc in the management of LHC and/or COUSINS and specifically consenting to all acts necessary to obtain financing for LHC or COUSINS including but not limited to refinancing the indebtedness, the assignment of any mortgage or note, the pledge of stock or partnership interest as necessary to secure any indebtedness of LHC or COUSINS, or manage the daily operations of LHC and COUSINS.
(E) To release Jules F. LeBlanc and Roland C. LeBlanc from any liabilities or obligations arising in connection with the execution of this agreement.
* * * * * *
10.
The parties hereto agree that the interest of Herman J. Malcombe will be sold, within thirty (30) days of the date of this agreement, for the following terms:
(A) Return of the $200,000.00 certificate of deposit previously offset by the Commerce & Energy Bank of Lafayette; plus,
(B) Payment of $14,000.00 cash."
After the expiration of the thirty day period, defendants were unwilling or unable to purchase plaintiff's interest and no other purchasers could be located.
Plaintiff then filed suit on January 7, 1986, alleging the LeBlanc defendants agreed to purchase his interest in LHC and Cousins and, despite amicable demand, defendants failed to perform their obligations under the agreement. Plaintiff sought a judgment ordering defendants to specifically perform their alleged obligations under the agreement and, in the alternative, prayed for damages in the amount of $214,000.00.
On January 31, 1986, defendant, Jules LeBlanc, filed various exceptions in defense of the suit, including a dilatory exception of nonjoinder of a necessary party and a peremptory exception of nonjoinder of an indispensable party. In support of the exceptions, LeBlanc argued that a complete adjudication of the controversy could not be reached without the joining of the Bank as a party since it had prepared the agreement, had required the plaintiff and the defendants to sign it, and was the party contemplated by the agreement to return the CD to plaintiff.
Plaintiff amended his original petition on March 18, 1987 to add the Bank as a defendant in the suit. The major substantive allegations against the Bank are contained in Paragraph 3 of plaintiff's first amended and supplemental petition, which are as follows:

*668 "III
Without giving any notice of any supposed default, without resorting to judicial proceedings, and without the knowledge or consent of Plaintiff, COMMERCE AND ENERGY BANK OF LAFAYETTE offset the indebtedness of Cousins Unlimited Partnership by applying the TWO HUNDRED THOUSAND AND NO/100 ($200,000.00) DOLLARS face amount of Plaintiff's Certificate of Deposit, along with EIGHT HUNDRED FIFTEEN AND 04/100 ($815.04) DOLLARS of interest earned by that certificate, to reduce the indebtedness owed by Cousins Unlimited Partnership."
In response to these allegations of the plaintiff's first amended and supplemental petition, the Bank filed a motion for summary judgment contending that certain language in the "Collateral Pledge Agreement" and "Assignment of Certificate of Deposit", both of which were signed by plaintiff, authorized the offset of plaintiff's CD to the Cousins note. In support of its motion, the Bank attached copies of the June 24, 1987 demand note of Cousins, the Collateral Pledge Agreement, and the Assignment of Certificate of Deposit.
A hearing on the motion for summary judgment was held on June 22, 1987 and the matter was taken under advisement. By minute entry signed on June 30, 1987 and filed in the record on July 1, 1987, the trial court rendered reasons for judgment. The trial court ruled that the Collateral Pledge Agreement and Assignment of Certificate of Deposit specifically authorized the Bank to offset the Cousins note by applying the plaintiff's CD to the loan balance, without prior notice to plaintiff. Accordingly, the Bank's motion for summary judgment was granted and plaintiff's suit against the Bank was dismissed with prejudice. A formal written judgment was rendered and signed on July 8, 1987. Plaintiff devolutively appeals from this judgment.

MOTION FOR SUMMARY JUDGMENT
LSA-C.C.P. Article 966 provides that a motion for summary judgment shall be granted if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file demonstrate that there is no issue as to material fact and the mover is entitled to judgment as a matter of law. The burden is on the mover to show clearly that there is no genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of a trial on the merits. Indus. Sand and Abrasives v. L. & N.R. Co., 427 So.2d 1152 (La.1983); Finley v. Safeco Ins. Co., 511 So.2d 457 (La.App. 3 Cir.1987).
On appeal, plaintiff contends in his first assignment of error the trial court erred in concluding defendants were entitled to a summary judgment as a matter of law. Plaintiff argues that the provisions in the contracts of pledge and assignment, which authorize the Bank to offset the CD without recourse to judicial proceedings or by any nonjudicial means other than public or private sale, are contrary to public policy or "contra bonos mores."
Execution upon pledged property in Louisiana at the time of this transaction was governed by the terms of LSA-C.C.Art. 3165, which provided that:
"The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain *669 in force and be subject to the provisions of this act." (Emphasis added.)
Plaintiff relies on the case of Alcolea v. Smith, 150 La. 482, 90 So. 769 (1921), D'Amico v. Canizaro, 256 La. 801, 239 So.2d 339 (1970), and Emile M. Babst Co., Inc. v. Commercial Enterprises, Inc., 274 So.2d 742 (La.App. 4 Cir.1973), writ den., 277 So.2d 673 (La.1973) for the proposition that the clause "sale or other disposition" in Article 3165 prohibits the pledgee from appropriating the pledged property in satisfaction of the debt. These authorities are factually inapposite and inapplicable to the instant case.
In Alcolea, the defendant loaned plaintiff money in return for plaintiff's pledge of certain diamond jewelry. A provision in the pledge contract provided that defendant would become the owner of the pledged property upon non-payment of the debt at maturity. The court held that such a stipulation in a contract of pledge is contra bonos mores. The court, however, noted that "after the debt for which the pledge is given has fallen due, the parties may lawfully agree that the pledgee may keep the pledge in satisfaction of the debt, but there was no such agreement in this case."
In Babst, the court refused to order the defendant corporation to allow the pledgee of stock to vote the stock or to transfer the stock on the books of the corporation to the pledgee. The court held the pledgee was not entitled to ownership of the pledged stock, notwithstanding the fact that the note, for which the stock was pledged to secure payment, had matured and was due and payable. The court did not give any indication that there was any agreement which might have brought the case within the exception noted by the Supreme Court in Alcolea. Likewise, in D'Amico, there was also no specific agreement authorizing the pledgee to offset the indebtedness.
We find that the principle enunciated in Alcolea, and reiterated in Babst and D'Amico, prohibiting clauses in pledge agreements allowing the creditor to appropriate the pledge unto himself upon failure of payment, is inapplicable in cases such as this where there is no question as to the value of the property pledged. The quoted language "or other dispositions" must be construed and the latter principle applied in light of the character of the property given in pledge. A certificate of deposit represents a sum certain in money which can be fairly and lawfully offset with a dollar for dollar credit given by the creditor against the pledgee's delinquent debt. On the other hand, diamond jewelry, as in Alcolea, and corporate stocks, as in Babst and D'Amico, are of uncertain value and their appropriation by the creditor-pledgee is prohibited, absent an agreement entered into after the debt has fallen due. We find this assignment of error is unsupported by the jurisprudence cited by plaintiff or by the facts of this case.
Plaintiff contends in his next assignment of error that the deposition testimony introduced at the hearing on the motion for summary judgment raises an issue of material fact as to whether the Cousins note was in default at the time of the offset. Specifically, plaintiff argues that although the subject note was payable on demand, all parties orally agreed that the note in question was to be paid in monthly installments of $13,000.00, and that none of these monthly payments were in default at the time of the offset. The Bank contends the demand note was due and payable anytime after June 24, 1984, the date of its execution; hence, the note was, by its very nature, in default from said date.
LSA-C.C. Article 1991[1] sets forth various methods of putting an obligor in default:
"An obligee may put the obligor in default by a written request or performance, or by an oral request of performance made before two witnesses, or by filing suit for performance, or by a specific provision of the contract."
*670 The collateral pledge agreement signed by plaintiff contains the following provision:
"... if there is any default under the Indebtedness, Pledgor hereby irrevocably authorizes Bank to sell, assign, transfer and effectively deliver all Collateral, or any part or parts thereof, at public or private sale, or on or through any exchange or broker's board, and at such time or times as the Bank may, in its sole discretion, elect, without recourse to judicial proceedings and without demand for payment, appraisement, advertisement or notice of any kind, all of which Pledgor hereby waives."
One of the "events of default" listed under the collateral pledge agreement is "if the indebtedness is not paid in accordance with its terms."
After examining the pleadings and deposition testimony we find there is a sufficient material dispute as to whether there was an oral novation of the demand note, allowing Cousins to make monthly installment payments, or whether or not there was only an agreement to not make demand on the note as long as monthly payments were being made. We further find that there is a dispute of fact as to whether the monthly payments were delinquent at the time of the offset.
The depositions of Jules LeBlanc and Gary Lewis were introduced into evidence at the hearing of the motion for summary judgment. Gary Lewis, the Bank's Senior Vice-President, testified that it was agreed that payments on the note of Lafayette Health Club were to be made in monthly payments of $13,000.00 and that the payments were current when the offset of the CD was made on June 10, 1985. Mr. Lewis also testified that he was prepared to make a written request for payment of the entire outstanding balance on the Cousins note had plaintiff and defendants refused to execute the agreement on July 15, 1985.
In regard to the timeliness of the payments, Mr. Lewis testified that the monthly payments were "up to date" in June of 1985 when the offset took place. In contrast, Jules LeBlanc testified in his deposition that, at the time the Bank offset the CD, Cousins was three months delinquent in its monthly payments.
In light of the foregoing evidence, we believe there is an issue of fact as to whether plaintiff was in default on the note and whether or not it was due at the time of the offset. For this reason, the trial judge erred in granting the Bank's Motion for Summary Judgment as there existed a material question of fact.
For the reasons assigned, the judgment of the trial court granting defendants' motion for summary judgment is reversed and the case is hereby remanded to the District Court for further proceedings. All costs of this appeal are assessed to defendant-appellee, Commerce and Energy Bank of Lafayette.
REVERSED AND REMANDED.
NOTES
[1] This article reproduces the substance of former C.C. Article 1911(2) (1870). It does not change prior law.