579 So.2d 1115 (1991)
OUACHITA NATIONAL BANK IN MONROE, Appellee,
v.
GULF STATES LAND & DEVELOPMENT, INC., et al., Appellants.
No. 22408-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
Rehearing Denied June 13, 1991.
*1116 Hudson, Potts, Bernstein by James A. Rountree and William T. NcNew, Monroe, for plaintiff-appellee, Ouachita Nat. Bank.
*1117 Winstead, Sechrest & Minick, Houston, Tex., by W. Mike Baggett, Dallas, Tex., and Jeff Joyce, Houston, Tex., Appeal Counsel.
Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, for defendants-appellants, Gulf States Land & Development, Inc.
Before MARVIN, NORRIS and VICTORY, JJ.
NORRIS, Judge.
The plaintiff, Ouachita National Bank in Monroe ("ONB"), now known as Premier Bank, N.A., sued the defendants on 41 promissory notes made in furtherance of a real estate project in Monroe. The defendants admitted signing the notes but advanced several defenses, including a claim that ONB breached an overall agreement consisting of both the notes and a "commitment letter." Related litigation arising from the same transaction was consolidated with the instant suit in the trial court. The plaintiff moved for partial summary judgment, conceding that the agreement created a genuine issue of material fact as to the rate of interest on certain of the notes. The trial court denied the motion, holding that the agreement created a genuine issue of material fact as to the maturity date of certain of the notes. Later, the plaintiff filed a virtually identical motion for partial summary judgment, which the trial court granted. The defendants now appeal. For the reasons expressed, we reverse and remand.

Factual synopsis
The following facts are based on the voluminous affidavits, depositions and answers to interrogatories filed in support of and opposition to the motion for summary judgment.
The debt and mortgage arose from an agreement for ONB to finance the sale and development, and for Gulf States to develop, a tract of land to be called North Pointe Subdivision on U.S. Hwy. 165 north of Monroe. The defendants herein, Stanley Palowsky Jr., Dr. John Smiarowski, Larry James and Walter Meredith (plus one other purchaser, Prentiss Seymour, who is not involved in the suit) individually bought the tract for $800,000 and later incorporated as Gulf States Land and Development, Inc. At the time of the sale the tract was already mortgaged to ONB for $1.3 million; thus ONB was involved in the sale. One of the previous owners was Dr. Smiarowski; both he and Palowsky had prior business dealings with ONB.
In August 1986 ONB's discount committee approved a line of credit of $1.6 million to Dr. Smiarowski and the other defendants. Two months later, ONB's executive vice president, A. Whitfield "Whitty" Hood, wrote a commitment letter to Palowsky, confirming an agreement to lend over $2.8 million for the project. The letter stated:
 The Ouachita National Bank
 in Monroe
 Monroe, Louisiana 71210
 October 13, 1986
 Stanley Palowsky, Et Al.
 Monroe, La. 71201
 Dear Stanley,
This letter shall confirm our agreement as the Ouachita National Bank has agreed to lend an amount not to exceed $2,868,000.00 for the purpose of purchasing and developing the property located on Highway 165 North, currently known as J & S Pecan Farms. This commitment shall run for thirty months from the above date and shall be reduced by an amount of money equal to draws made against this commitment.
This loan shall be secured by a 1st Real Estate Mortgage covering approximately 88 acres of land being the property purchased and shall be personally guaranteed in the amount of $450,000.00 each by Mr. Stanley Palowsky, Dr. John Smiarowski, Mr. Prentiss Seymour, Mr. Walter Meredith and Mr. Larry James.
Funding for the thirty month period commencing with the above date shall be at 9.25 percent interest per annum. Upon completion of the project the amount of the debt shall be based upon the sale of lots involved in the mortgaged *1118 property and shall be fixed at a mutually agreed upon price.
 Very truly yours,
 s/A. Whitfield Hood, Jr.
 Executive Vice President
ONB has contended throughout this litigation that it neither authorized nor knew of this letter until March 1988. Nevertheless, Gulf States made a first draw of $800,000 against the commitment on October 13, 1986; this was represented by four notes. The next notes, payable on demand, were executed in March 1987; thenceforth the defendants made fairly regular draws through February 1988, always signing notes for the amount of the draw. Most of the notes were due 182 days from date; nine of them recited interest rates higher than the 9.25% stated in the commitment letter.
ONB concedes that in August or September 1987, Hood advised ONB's president R.L. Vanderpool III that he had intended to present an agreement to loan a total of $2.4 million to the discount committee, $800,000 for purchase money and $1.6 million for development. According to ONB, by March 1988 Gulf States had almost drawn $2.4 million, which ONB then perceived as the extent of its commitment.
According to Gulf States, the relationship between it and ONB had by then deteriorated significantly. Around March 13 ONB's special assets officer, Mr. Aron, called some of the defendants to say that further funds under the commitment would not be forthcoming. Palowsky disagreed with Aron and urged him to review his documentation. Palowsky avers by affidavit that the withholding of funds effectively stopped work on the subdivision.
Gulf States and the defendants herein (except Meredith) filed suit against ONB on March 21 (No. 88-978), alleging that ONB had "deliberately ignored" its agreement and engaged in conduct "totally lacking in good faith and fair dealing" with Gulf States. Meanwhile, Mr. Aron was reviewing the loan file and on March 18 he "discovered" the commitment letter of October 13, 1986. The discount committee met on Sunday, March 20, 1988 and voted to ratify the commitment letter; on March 22, one day after suit No. 88-978 was filed, Vanderpool advised Gulf States that ONB would honor the commitment and continue to advance funds under it.
According to ONB, it ultimately loaned Gulf States over $2.7 million, or 94% of its commitment, and it paid several overdrafts on Gulf States' account. ONB claimed the loan proceeds were being misapplied, as the subdivision was only about one-third complete and overdraft checks were being written to Gulf States' lawyers. According to ONB, after March 21, 1988 Gulf States discontinued interest payments, failed to renew promissory notes and refused to furnish current financial statements. ONB filed the instant suit (No. 88-3110) on August 30, 1988 to collect the 41 notes and to recognize the mortgage on the subdivision property.
Gulf States did not deny that it executed the notes and made no payments after March 22, 1988. It asserted, however, that ONB breached its agreement in various ways, such as by charging excess interest on notes, failing to fund the project as they had agreed, and placing "more onerous requirements" on the borrowing of funds than were ever agreed to. Gulf States contended that ONB's decision to stop funding not only prevented completion of the subdivision but blocked the sale of lots from which the borrowed money was to be repaid.
Of the notes sued upon, three (totalling $60,000) were executed after March 22, 1988. Mr. Aron's deposition avers that ONB also loaned Gulf States $180,000 to cover its overdrafts, but does not specify how much of this loan came after March 22.
ONB subsequently filed another suit against the same defendants (No. 88-4484) for declaratory judgment that Gulf States had breached its obligations under the agreement and that ONB should be excused from further honoring it. Suits Nos. 88-978 and 88-4484 were later consolidated with the instant suit but the motion for summary judgment at issue here applied to the suit on the notes, No. 88-3110.

*1119 Motions for summary judgment

ONB filed its first motion for partial summary judgment on November 14, 1988. It asserted that the defendants had advanced only general denials to ONB's allegations but stated that the "interest rate set forth on the various promissory notes signed by the defendants occasionally exceeded 9.25% per annum, which was a rate established in a commitment letter dated October 13, 1986." ONB therefore remitted all interest over 9.25% but asserted there were no material facts in dispute as to the principal and 9.25% interest on the notes. In support, ONB filed Mr. Vanderpool's affidavit averring that 38 of the notes were past due on their face and the other three were in default because the defendants failed to furnish current financial statements when requested. ONB also attached a copy of Mr. Vanderpool's demand letter of November 12, 1987 to Palowsky.
The defendants opposed the motion, urging genuine issues of material fact as to, inter alia, the interest rate, the alleged breach of the agreement by ONB, and whether the notes were "presently due" under the terms of the commitment letter. In support they filed a copy of the commitment letter, copies of various instruments, and affidavits and depositions. They argued that the notes could not be presently due because the 30 month commitment period had not yet expired and, at any rate, the letter contemplated that ONB and the borrowers "had agreed to enter into a method of repayment of the indebtedness from lot sales," which ONB had not honored. R.p. 313.
ONB obtained leave of court to file supplemental affidavits and documents in support of the motion; the defendants responded with several sets of additional filings in opposition. During this time discovery proceeded, as did litigation of issues not essential to this opinion. See, e.g., Ouachita Nat'l Bank in Monroe v. Palowsky, 554 So.2d 108 (La.App. 2d Cir.1989).
The first motion for partial summary judgment was submitted on the record in December 1988. By reasons for judgment dated January 20, 1989, the trial court observed that the clear and unambiguous language of the notes would justify summary judgment, and that the defendants' answers, reconventional demand and counter affidavits would not appear to have merit. The court stated, however:
[T]he Defendants do raise one issue which probably entitles them to the opportunity to present competent evidence, if it exists, on their day in court. That issue concerns whether or not the terms of the notes sued upon and the maturity of those notes were altered by any simultaneous or subsequent agreements or contracts between the parties as suggested, particularly, by the convoluted facts encompassing Plaintiff's issuing of a commitment letter to Defendants on or about October 13, 1986. R.pp. 657-658.
The court further noted that even though the defenses may appear vulnerable, Gulf States should have its day in court to expand upon them. The court therefore denied ONB's motion for partial summary judgment. ONB took writs to this court and the Supreme Court; both were denied. See Ouachita Nat'l Bank v. Gulf States, 556 So.2d 50 (La.1990).
ONB filed its second motion for partial summary judgment on February 23, 1990. Citing the commitment letter, this motion acknowledged that ONB could seek only 9.25% interest on all notes, as well as that the first motion had come before the 30 month commitment period expired in March (actually April) 1989. ONB sought the same relief it had prayed for in the previous motion. In support it filed numerous affidavits, depositions, letters and other documents. By memorandum it argued that Gulf States' only colorable defense, prematurity, had been removed by the passage of 30 months, and that the defendants' claims against ONB were not liquidated and thus not a defense to the liquidated debts evidenced by the notes. By supplemental memorandum, ONB argued the defendants waived the defense of prematurity by failing to file the dilatory exception prior to their general appearance.
*1120 The defendants opposed the motion, relying on the documents they had previously filed and filing more. They still maintained that ONB breached the agreement by failing to fund the project adequately. Palowsky's deposition averred that under the agreement "payments were to be made from lot sales" which ONB had effectively prohibited; Gulf States' memorandum argued that the papers on file showed that ONB had defaulted on its obligation to provide the necessary funding for the project and, indeed, done "everything within its power" to stop the project.
Hearing on ONB's second motion was held on March 8, 1990 (together with hearing on the defendants' motion for summary judgment, which was denied). The court stated that it denied ONB's first motion "because of the possible extension" but that time "has long since past." After brief argument the court granted partial summary judgment in favor of ONB as prayed for. The court later denied the defendants' motion for new trial, and this appeal followed.

Applicable law
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine factual dispute. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Zadeck v. Arkansas Louisiana Gas Co., 338 So.2d 303 (La.App. 2d Cir.1976). The motion should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La.1981); Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983). The mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such an issue must be resolved against granting the motion. Industrial Sand & Abrasives, Inc. v. Louisville & Nashville R. Co., 427 So.2d 1152 (La.1983); Odom v. Hooper, 273 So.2d 510 (La.1973).
To satisfy his burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Watson v. Cook, supra. The papers supporting the mover's position are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion Corp. v. Vaughn, supra. When the court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981).
Summary judgment will not be granted even if the trial court has grave doubts as to a party's ability to establish the disputed facts. Aydell v. Charles Carter & Co., 388 So.2d 404 (La.App. 1st Cir.), writ denied 391 So.2d 460 (1980). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca Cola Bottling Co., 354 So.2d 659 (La.App. 1st Cir.1977). The weighing of conflicting evidence therefore has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.), writ not considered 302 So.2d 308 (1974).
A motion for summary judgment is not suitable for disposition of cases requiring a judicial determination of subjective facts such as motive, intent, good faith or knowledge. Penalber v. Blount, 550 So.2d 577 (La.1989); Watson v. Cook, supra. Credibility determinations have no place in summary judgment procedure. Watson v. Cook, supra; Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir. 1976), writ denied 343 So.2d 1072 (1977).
In negotiable instruments law, the holder is a person who is in possession of an instrument drawn, issued or indorsed to *1121 him or his order or to bearer or in blank. La.R.S. 10:1-201. Once the holder proves the maker's signature, or the maker admits it, the holder has made out his case by mere production of the instrument and is entitled to recover in the absence of any further evidence. La.R.S. 10:3-307(2). The defendant then has the burden of establishing any defenses. La.R.S. 10:307 (U.C.C. Comment 2).
Summary judgment is the appropriate procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement. American Bank v. Saxena, 553 So.2d 836 (La.1989).
As between the parties to the instrument (ONB concedes it is not a holder in due course) the defendant may assert all defenses that would be available in an action on a simple contract, want or failure of consideration and nonperformance of any condition precedent, among other defenses. R.S. 10:3-306(b) and (c); American Bk. & Tr. Co. v. Sunbelt Environmental Systems Inc., 451 So.2d 1111 (La.App. 1st Cir. 1984); Fly v. Hand, 376 So.2d 1016 (La. App. 1st Cir.1979). Parol evidence is admissible between the parties to the instrument to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties. Scafidi v. Johnson, 420 So.2d 1113 (La. 1982).
Just because the defendant may have a separate, unrelated claim or reconventional demand against the holder based on fraud, deceit or misrepresentation does not mean that he has a defense sufficient to thwart the motion for summary judgment. American Bank v. Saxena, supra; Sims v. Hays, 521 So.2d 730 (La.App. 2d Cir.1988).
When one party to a contract substantially breaches it the other party has a defense and an excuse for non-performance. La. C.C. art. 2013; Pennington v. Drews, 218 La. 258, 49 So.2d 5 (1950); B.F. Edington Drilling Co. v. Yearwood, 239 La. 303, 118 So.2d 419 (1960); Olympic Ins. Co. v. H.D. Harrison Inc., 463 F.2d 1049 (5th Cir.1972), cert. denied 410 U.S. 930, 93 S.Ct. 1373, 35 L.Ed.2d 593 (1973), and citations therein. A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee. La.C.C. art. 2014; Morris v. Homco Int'l Inc., 853 F.2d 337 (5th Cir.1988). For a court to refuse to dissolve a contract under art. 2014, the obligor must prove that he rendered a substantial part of the performance and that the unperformed portion did not impair the obligee's interest. La.C.C. art. 2014, Comment (c).
In addition to the defense of want or failure of consideration, the debtor may defend on the basis that the creditor breached its obligation to accept monthly payments or to allow prepayment of the note. Malcombe v. LeBlanc, 539 So.2d 665 (La.App. 3d Cir.1989); Mandella v. Russo, 294 So.2d 598 (La.App. 4th Cir.1974). Other claims based on the relationship between the parties may also defeat the motion. Rosenthal v. Oubre, 504 So.2d 1102 (La. App. 5th Cir.1987).
An ambiguous contract or writing is interpreted against the party who drafted it. La.C.C. art. 2057; Kenner Indus. Inc. v. Sewell Plastics Inc., 451 So.2d 557 (La.1984); Fullerton v. Scarecrow Club, 440 So.2d 945 (La.App. 2d Cir.1983). Ambiguity of a writing essential to the mover's recovery may defeat a motion for summary judgment. Gautreau v. Southern Farm Bur. Ins. Co., 410 So.2d 815 (La.App. 3d Cir.1982), rev'd on other grounds 429 So.2d 866 (1983).

Discussion
The recitation of facts shows that twice already the notes on which ONB sues have been recognized as part of a larger agreement between Gulf States and ONB; the commitment letter is equally a part of the contract. ONB has acknowledged that the letter ("Funding * * * shall be at 9.25 percent interest per annum") altered the interest rate stated in nine of the notes; *1122 the trial court found that the letter ("Funding for the thirty month period commencing with the above date") may have altered the maturity dates of the notes. In both instances the agreement, evidenced by the letter, altered express terms of the notes and created a genuine issue of material fact.
Still urging that ONB materially breached its loan obligation, Gulf States also argues that a third portion of the letter ("Upon completion of the project the amount of the debt shall be based upon the sale of lots involved * * * and shall be fixed at a mutually agreed upon price") alters the amount of the debt, or subjects it to conditions. We agree that this portion of the letter is also part and parcel of the overall agreement and the notes must be construed with it.
The third portion creates the possibility that the parties intended that upon completion of the project, they would mutually fix prices for lots and that repayment to ONB would be based upon the proceeds of these lot sales. The substance of Gulf States' allegations is that ONB refused to allow the project to reach completion and agree on a price, thus breaching its end of the agreement; their legal conclusion is that ONB's breach may justify Gulf States in ceasing its own performance. See, e.g., Gulf States' Answer to the Original and First Amending Petition filed October 19, 1988, R.p. 41. This may be a defense. The measure, of course, is whether ONB's breach was minor and inconsequential, or substantial. La.C.C. art. 2014. In our opinion the determination of whether the obligor's breach is substantial or not involves factual issues and may not be disposed of by motion for summary judgment. For this reason, the judgment must be reversed.
We recognize that the commitment letter may not clearly express an intent on ONB's part to condition repayment on the sale of lots; but the lack of clarity must be ascribed to ONB, whose agent Hood drafted the letter. The question whether ONB intended to obligate itself this way, together with whether the alleged breach was substantial, are genuine issues of material fact present upon this record.
ONB relies on three cases for the proposition that a counterclaim against the bank on allegations of acts of fraud or breach of contract does not ordinarily defeat the holder's motion for summary judgment. In American Bank v. Saxena, supra, the bank agreed through its agents, Gatlin and Hollan, to provide construction financing for Saxena's hotel project. Saxena and Gatlin formed a partnership and began the project, with Saxena obligating himself on an initial construction loan. Saxena subsequently executed a series of notes for loans unrelated to the initial construction. Several years later, when the bank sued on the notes, Saxena urged that Hollan had made but failed to keep certain preconstruction commitments, such as supervising construction and getting a post-construction appraisal, but he did not produce the letter that allegedly memorialized these agreements. 553 So.2d at 838. In holding that these contentions could not frustrate the bank's motion for summary judgment on the notes, the Supreme Court stated:
Fundamentally, Saxena's argument is flawed because the only contracts between the bank and Saxena are the promissory notes themselves and his alleged defenses are unrelated to those contracts. 553 So.2d at 843.
In the instant case the record clearly shows that the notes are not the only agreement, and Gulf States has asserted a breach of the larger agreement and this may be a defense. Gulf States' defenses are decidedly not unrelated to the notes. The law of Saxena therefore does not alter our conclusion in this case.
In Sims v. Hays, supra, the parties dissolved a partnership, with Sims purchasing Hays's interest and giving her a note for the purchase price. Sims reserved her right to an accounting. When Sims sued for her accounting, Hays reconvened on the note. Sims admitted she owed the note and offered no defense to it, but simply sought a set-off against whatever amount Hays might owe her. Notably, there was no allegation that Hays breached any agreement *1123 between the parties. Under those facts, the motion for summary judgment was well founded. In the instant case the interpretation of the agreement and the substantiality of the alleged breach are material issues that make summary judgment improper.
ONB also argues, with considerable force, that when a bank withdraws its commitment from a borrower, this is not a defense on the notes. American Bk. & Tr. Co. in Monroe v. Carson Homes Inc., 344 So.2d 456 (La.App. 2d Cir.), writ denied 346 So.2d 221 (1977). There the lender sued on four promissory notes and ultimately moved for summary judgment; the defendants reconvened, alleging fraud, deceit and misrepresentation and seeking damages for the lender's alleged failure to advance monies as it had agreed to do. This court held that the lender's motion for summary judgment was well founded. We noted, however:
As we construe the defendant's pleadings, the allegations of fraud, deceit, and misrepresentation are not urged as a defense to the demands of plaintiff, but are asserted as a separate cause of action for damages by reconventional demand. There are no affidavits filed in connection with these demands. The allegations of fact made by defendants in their reconventional demand are not directed at any invalidity in the confection of the notes or mortgages sued on or to dispute the balance owed thereon. 344 So.2d at 456.
While recognizing a certain similarity between the facts in Carson Homes and the instant case, we are constrained to note that the debtors there did not urge the breach of contract as a defense to the debt sued on and did not even file affidavits to oppose the motion for summary judgment. Such is simply not the case here, and Carson Homes is distinguished.
The instant case is conceptually more akin to Scafidi v. Johnson, supra. There the creditor was a large (but not majority) stockholder in a company of which the debtor, Johnson, was a minor stockholder and employee. Scafidi and Johnson wanted to attain a majority interest and, in effect, dilute the interest of other investors. They did this by exercising preemptive rights to buy additional shares. Johnson, however, did not have the money to buy; in furtherance of their plan, Scafidi loaned him the money and Johnson signed a promissory note. It was agreed that Johnson would not be required to repay the note except with stock dividends. Later, Scafidi attempted to collect the note. The Supreme Court held that there was a condition precedent to Johnson's obligation, namely the receipt of dividends sufficient to make payment. Since there was non-performance of this condition, Johnson was excused from performing on the note. 420 So.2d at 1116.
If the existence of such a condition and breach may defeat the action after a full trial, then a fortiori it may defeat the motion for summary judgment. In Malcombe v. LeBlanc, supra, the debtor asserted that the promissory note was part of an agreement whereby the holder would accept monthly payments; and the holder had refused to take the payments. The court of appeal held that this condition and breach presented a genuine issue of material fact and blocked the summary judgment.
We conclude that the papers on file in this record leave open the issue of whether or not ONB substantially breached the overall agreement, of which the notes are only a part, to the extent of excusing the defendants' non-performance. This is a genuine issue of material fact. The trial court was in error to grant ONB's motion.

Conclusion
Gulf States has filed, both in this court and in the trial court, a motion to supplement the record. By subsequent letter, however, Gulf States advises us that the trial court granted this motion on April 9, 1991. We have not considered this material in reaching our decision and do not perceive any need to rule on the motion at this time.
For the reasons expressed, the partial summary judgment in favor of ONB is reversed and the case remanded to the trial *1124 court for further proceedings. Costs of appeal are assessed to the appellee, Premier Bank, N.A.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, VICTORY and BROWN, JJ.
Rehearing denied.