763 So.2d 103 (2000)
Mitzi JOHNSON
v.
Edward R. DRURY.
Nos. 99-CA-608, 99-CA-1071.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 2000.
*105 Ronnie J. Berthelot, Shows, Cali & Berthelot, Baton Rouge, Louisiana, for plaintiff-appellee.
Michael J. Phillips, Edward R. Drury, Metairie, Louisiana, for defendant-appellant.
Judges EDWARD A. DUFRESNE, Jr., SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
McMANUS, J.
On July 20, 1973, Edward Drury executed a promissory note payable to Security Homestead Association in the amount of $254,000.00 and a mortgage encumbering four Metairie lots at 2134 Metairie Road known as Maison Metairie Apartments. The mortgage required Mr. Drury to make monthly mortgage payments of $2,153.92 commencing in August of 1973. In August of 1989, Security Homestead Association was placed into conservatorship, and the note was transferred to the Federal Savings and Loan Insurance Corporation (FSLIC), and then to the Resolution Trust Corporation ("RTC"). In June of 1992, the RTC assigned the note and mortgage to Alaska Southern Partners from whom Ms. Mitzi Johnson acquired the note.[1] *106 The record reflects that Ms. Johnson is a partner and officer of Alaska Southern Partners.
On December 2, 1996, Ms. Johnson filed suit against Mr. Drury averring that he was in default for failure to pay the monthly installments. In her original petition, Ms. Johnson sought payment of $128,784.10, together with interest at the rate of 9.00% per annum from August 15, 1995, reimbursement of $3,278.07 in 1996 property insurance costs, reimbursement of $15,481.38 in property taxes, 10% of the amount due, attorney fees and all costs.
On April 21, 1997, Mr. Drury filed an Answer, Reconventional Demand, and Third Party Demand denying the allegations in Ms. Johnson's petition. Mr. Drury, in his reconventional demand, avers that he was instructed by Ms. Johnson not to make payments during negotiations for his own purchase of the note, Ms. Johnson was negligent in failing to properly credit Mr. Drury's loan with the monthly payments that he made, Ms. Johnson failed to pay taxes and insurance from the escrow portion of Mr. Drury's loan, and Ms. Johnson failed to notify Mr. Drury of the current address or bank account where payments could be made. Mr. Drury also claimed that Ms. Johnson was unjustly enriched because he was not allowed to purchase the note at a price which exceeded Alaskan Southern Partners' offer. Mr. Drury also filed a third party demand against the FDIC and the RTC subsidiary for selling the note to Alaska Southern Partners at a lower price than his offer.
On November 13, 1997, Ms. Johnson filed the instant Motion for Summary Judgment to enforce the terms of the original note.
On December 19, 1997, Mr. Drury filed a Supplemental and Amending Third Party Demand asserting that the FDIC violated his constitutional due process and equal protection rights under the State and Federal Constitutions.
On January 12, 1998, the FDIC, as receiver for Security Homestead Association, filed a copy of the Notice of Removal removing this matter from the Twenty-Fourth Judicial District Court to the U.S. District Court for the Eastern District of Louisiana.
On May 21, 1998, the United States District Court of the Eastern District of Louisiana granted FDIC's Motion to Dismiss and subsequently remanded that matter to the Twenty-Fourth Judicial District Court.
On September 14, 1998, Ms. Johnson filed a motion to re-urge her original Motion for Summary Judgment and the amended claim that she receive reimbursement for the additional ad valorem taxes that she paid in 1997.
On November 2, 1998, Mr. Drury filed a Second Supplemental and Amending Third Party Demand asserting the same claims against the FDIC and RTC.
On December 22, 1998, the trial court granted Ms. Johnson's Motion for Partial Summary Judgment against Mr. Drury on the issue of liability.
In its reasons, the trial court stated that Ms. Johnson, as a subsequent holder of a note from the FDIC, is a holder in due course under the D'Oench Duhme[2] doctrine, which states that Mr. Drury, as maker of the promissory note, is barred from asserting personal defenses, unrecorded side agreements or unliquidated claims to set off the amount due under the note. The trial court did not reach the merits of Mr. Drury's reconventional and third party demands. The trial court awarded Ms. Johnson costs and appointed a special master to file a report of the amount owed by Mr. Drury. The trial *107 court designated the December 22, 1998 judgment as a final judgment.
On January 15, 1999, Mr. Drury filed a suspensive appeal on the December 22, 1998 judgment. On January 15, 1999, the FDIC also filed a Notice to Remove the case to the United States District Court for the Eastern District of Louisiana. On March 11, 1999, the United States District Court for the Eastern District of Louisiana severed the state claims and remanded them to the Twenty-Fourth Judicial District Court.
On June 8, 1999, the trial court accepted the findings in the special master's report and rendered judgment for Ms. Johnson in the amount of $128,155.05 for the unpaid balance of the loan, with accrued interest of $26,369.43 through January 31, 1999 and interest thereafter at the rate of 9 percent per annum until paid, $27,208.60 for taxes and insurance paid by Ms. Johnson, attorney's fees in the amount of 10 percent of both the principal and interest, and all costs of these proceedings subject to an escrow account balance credit of $7,443.33. The trial court also recognized and enforced Ms. Johnson's vendor's lien and privilege which appeared in the official records of the recorder of mortgages for Jefferson Parish. On June 29, 1999, Mr. Drury filed a suspensive appeal on the June 8, 1999 judgment on the damages. On October 1, 1999, both cases were consolidated.
On appeal, Mr. Drury alleges these specifications of errors:
1) Ms. Johnson is not a holder in due course of the note and she is therefore subject to all of the claims and defenses that Mr. Drury could assert against her predecessors in interest.
2) RTC's sale of the note to Alaska Southern Partners for $8,000 .00 less than the amount which Mr. Drury offered for it was arbitrary, capricious, a breach of the covenant of good faith and fair dealing, and a deprivation of equal protection of the laws.
3) Ms. Johnson has been unjustly enriched.
Ms. Johnson filed an answer alleging that she is entitled to attorney's fees for the defense of this matter on appeal. In light of the fact that Mr. Drury's Third Party Demand against the FDIC/RTC is proceeding in federal court, we pretermit discussion of specifications of errors two and three.

SUMMARY JUDGMENT
Mr. Drury argues Ms. Johnson is not a holder in due course because D'Oench, Duhme doctrine does not protect the FDIC or its transferees from claims resulting from the FDIC's wrongful actions while in its receivership capacity. Specifically, Mr. Drury alleged that the FDIC, through its successor RTC, engaged in unfair business and trade practices because it failed to consider his offer to purchase the note for $52,000 and instead sold the note to Alaska Southern Partners for $44,032.27. Mr. Drury alleges that the RTC failed to properly credit his account, and failed to pay the taxes and insurance from the escrow portion of his loan. We note that the FDIC removed this case to federal court and the issues regarding Mr. Drury's Third Party Demand were severed. Since only the claims in Mr. Drury's reconventional demand were remanded, we pretermit discussion of the issues in Mr. Drury's Third Party Demand.
In his reconventional demand, Mr. Drury avers that Ms. Johnson and Alaska Southern Partners took the note with notice of overdueness. He also avers that Ms. Johnson and Alaska Southern Partners instructed Mr. Drury to stop making payments on the note. Mr. Drury further averred that Ms. Johnson did not properly credit Mr. Drury's account and she did not pay taxes and insurance from the escrow portion of the loan.
It is well settled that a motion for summary judgment should be granted *108 only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Nevertheless, summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Tonubbee v. River Parishes Guide, 97-440 (La.App. 5 Cir. 10/28/97), 702 So.2d 971, 974, writ denied, 97-3012 (La.2/13/98), 709 So.2d 747. Under the recently-amended version of La.C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La.C.C.P. arts. 966 and 967; Tonubbee, 702 So.2d 971, 975.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1 Cir.6/20/97) 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29.
In D'Oench, Duhme & Co. v. Federal Deposit Ins. Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the United States Supreme Court held that the maker of a note could not assert as a defense to its enforcement a secret agreement between the note's maker and the lending bank when the note had been acquired by the federal insurer. The D'Oench, Duhme decision and its progeny have developed a well known federal common law doctrine immunizing the FDIC and the RTC, as receivers and conservators of defunct financial institutions, from claims and defenses based on agreements not firmly established in the failed financial institution's official records. Resolution Trust Corporation v. Oaks Apartments Joint Venture, 966 F.2d 995, 998-999 (5th Cir.1992). The doctrine bars defenses or claims based on oral or secret agreements between the financial institution and borrower which alter or condition the terms of existing unqualified obligations. It also precludes the enforcement of any defense based on a written agreement that is not found within the bank's records. Federal Deposit Insurance Corporation v. Hamilton, 939 F.2d 1225, 1229-1230 (5th Cir.1991).
The D'Oench Duhme doctrine has been codified in 12 U.S.C. Sec. 1823(e), which grants the FDIC/ RTC the power to void any agreement which tends to diminish or defeat the interest of the FDIC/ RTC in any asset acquired by it as a receiver unless such agreement: (1) is in writing; (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset; (3) was approved by the depository institution's board of directors or its loan committee; and (4) has been continuously an official record of the depository institution. The purpose of this statute is to protect the federal agency from hidden agreements which would defeat its interest in what is otherwise a facially valid note, as such agreements would hinder it from accurately valuing a bank's assets. Commerce Federal Savings Bank v. Federal Deposit Insurance Corp., 872 F.2d 1240, 1245 (6th Cir.1989).
Federal law has clothed the FDIC, RTC's predecessor, with holder in due course status in connection with purchase *109 and assumption transactions involving insolvent banks, even where the federal agency does not meet the technical requirements of state law. Campbell Leasing, Inc. v. Federal Deposit Insurance Corporation, 901 F.2d 1244, 1249 (5th Cir.1990); Federal Savings and Loan Insurance Corporation v. Murray, 853 F.2d 1251, 1256-1257 (5th Cir.1988).
Furthermore, the FDIC's federal holder in due course rights, which preclude the makers of promissory notes from asserting against the FDIC a variety of personal defenses in connection with the original transaction, have been extended to the FDIC's assignees. Campbell Leasing, Inc. v. FDIC, 901 F.2d 1244, 1248 (5th Cir.1990); FDIC v. Newhart, 892 F.2d 47, 50 (8th Cir.1989). The rationale for extending such rights to assignees is that the failure to provide such protection to purchasers would seriously undermine the Congressional policy of promoting purchase and assumption agreements and thereby reduce the market for notes acquired by the FDIC as a receiver. Such a result would have a deleterious effect on the FDIC's ability to protect the insured depositors of the insolvent banks. FDIC v. Bledsoe, 989 F.2d 805, 811 (5th Cir. 1993); Newhart, 892 F.2d at 50. However, the federal agency is not accorded holder in due course status when defenses are directly based from the text of loan agreements. Federal Deposit Insurance Corp. v. Vernon Real Estate Investments, Ltd., 798 F.Supp. 1009, 1014-1015 (S.D.N.Y. 1992). In this case, the D'Oench Duhme doctrine is not applicable because Mr. Drury is not asserting, as a defense to the enforcement of the note, that he entered into a secret agreement with the lending bank which bars the enforcement of the note. Since the federal holder in due course doctrine does not apply in this case, it must be determined whether Ms. Johnson is entitled to summary judgment based on Commercial Laws.
A negotiable instrument must (a) be signed by the maker or drawer; (b) contain an unconditional promise to pay a sum certain in money; (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer. La.R.S. 10:3-104. Unless specifically denied in the pleadings, each signature on an instrument is admitted. La.R.S. 10:3-308. As Mr. Drury made no attempt to deny the validity of his signature on the note at issue, he is deemed to have admitted that he signed the instrument. When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. La.R.S. 10:3-308.
In order to decide this case, we find it unnecessary to determine whether Ms. Johnson is a holder in due course. Ms. Johnson is at least a holder and has the right to seek enforcement of the note under La-R.S. 10:3-301. As a holder, Ms. Johnson's rights are clearly articulated in La-R.S. 10:3-306, which addresses the rights of one not holder in due course, as follows:
A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.
In American Bank v. Saxena, 553 So.2d 836 (La.1989), the Supreme Court held that summary judgment is the appropriate procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement. Once the plaintiff, the holder of a promissory note, proves the maker's signature, or the maker admits it, the holder has made out his case by mere production of the note and is entitled to recover in the absence of any further evidence. Thomas v. Bryant, 597 So.2d 1065, 1068 (La.App. 2 Cir.1992).
*110 Once the plaintiff has met his burden of proof, the burden shifts to the defendant to prove the existence of a triable issue of fact. Saxena, 553 So.2d at 846. Such proof can be established through parol evidence. Scafidi v. Johnson, 420 So.2d 1113, 1115 (La.1982); Thomas, 597 So.2d at 1068. However, the evidence must be admissible as a matter of law and must consist of specific factual details. For example, in Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App. 3 Cir.1985), the Third Circuit held that the documents submitted by the plaintiff/seller provided convincing proof that its claim was valid, where the defendant disputed the amount claimed by plaintiff/seller, but offered no specific facts that supported his allegation. Furthermore, in Louisiana National Bank of Baton Rouge v. Jumonville, 563 So.2d 965 (La.App. 1 Cir.1990), the First Circuit held that parol evidence could not be admitted to vary terms of the note, where debtor never contested that he owed money, rather only contested when money was due and owing.
In order to defeat summary judgment, the defendant must assert a valid defense to liability on the note, not separate and distinct claims that are unrelated to the question of liability. Saxena, 553 So.2d at 844. In Gulf Federal Savings and Loan Association v. Nugent, 528 So.2d 782 (La.App. 3 Cir.1988), writ denied, 533 So.2d 19 (La.1988), the Third Circuit affirmed the trial court's judgment granting summary judgment because there was no dispute regarding the note and guaranty even though there was a factual dispute that existed concerning substitution of collateral. Both the Saxena and Nugent courts granted summary judgment and held that a defendant cannot plead, as a defense, unliquidated claims for damages as compensation or setoff against a liquidated amount due on a promissory note.
Although the defendant may have a separate, unrelated claim or reconventional demand against the holder based on fraud, deceit or misrepresentation, the separate, unrelated claim is not necessarily a defense sufficient to thwart the motion for summary judgment. Saxena, 553 So.2d at 845-846. In order to successfully thwart a motion for summary judgment, a debtor must allege the defense of want or failure of consideration, and he may defend on the basis that the creditor breached its obligation to accept monthly payments or to allow prepayment of the note. Malcombe v. LeBlanc, 539 So.2d 665, 670 (La.App. 3 Cir.1989); Mandella v. Russo, 294 So.2d 598, 601 (La.App. 4 Cir.1974). Other claims based on the relationship between the parties may also defeat the motion. Rosenthal v. Oubre, 504 So.2d 1102, 1105-1106 (La.App. 5 Cir.1987).
In both Malcombe v. LeBlanc, 539 So.2d 665 (La.App. 3 Cir.1989), and Ouachita National Bank in Monroe v. Gulf States Land and Development, Inc., 579 So.2d 1115 (La.App. 2 Cir.1991), writ denied, 587 So.2d 695 (La.1991), summary judgment in favor of the holder of a promissory note was defeated because the debtor asserted a viable defense to liability on the note. In Malcombe, the debtor offered the deposition testimony of the creditor to prove an agreement that monthly payments could be made on the note, which evidence created an issue of fact as to whether the debtor was in default or whether the note was due at the time alleged. Malcombe, 539 So.2d at 669-670. In Ouachita National Bank, the defendant's allegation that the plaintiff breached an overall agreement, of which the notes were only a part, raised a genuine issue of material fact as to the question of liability on the note itself. Ouachita National Bank, 579 So.2d at 1123. Similarly, in Commercial National Bank in Shreveport v. Pipe Sales of Shreveport, Inc., 600 So.2d 130, 133 (La.App. 2 Cir.1992), writ denied, 604 So.2d 1006 (La.1992), the court reversed summary judgment in favor of the creditor because the defendant, a guarantor, raised an issue of fact as to whether the debt was legitimately contracted.
*111 Mr. Drury executed a mortgage in favor of Security Homestead Association and any future holder of the note. In the agreement, Security Homestead Association or its predecessors in interest had the option to declare the amount of the indebtedness immediately if Mr. Drury defaulted on the payment of the installment or interest for a period of three months. In this case, Mr. Drury failed to pay the note for the months of August of 1995 to December of 1995 and January of 1996 to August of 1996. Therefore, Mr. Drury has neither alleged nor proven the existence of any valid claim or defense to the notes.
While Mr. Drury alleges that Alaska Southern Partners instructed him not to make payments on the notes and Ms. Johnson failed to produce an address where payments can be made, these other theories of potential recovery do not relate to the contract that Mr. Drury entered into when he signed for the note and mortgage, but instead they are allegations of wrongdoing that are grounded in tort. Accordingly, Ms. Johnson is entitled to summary judgment on the issues of liability and quantum.
Ms. Johnson filed an answer seeking additional attorney's fees for the defense of this appeal. Generally, an increase in attorney's fees should be awarded when a party who was awarded attorney's fees in the trial court is forced to and successfully defends an appeal. Osborne v. Ladner, 96-0863, (La.App. 1 Cir. 2/14/97), 691 So.2d 1245, 1259.
After reviewing the entire record in this matter, we find that an increase in the attorney's fees award is warranted. The appeal perfected by appellants necessitated additional work for Ms. Johnson's attorney, including the preparation of an answer to the appeal and preparation of an appellee brief. Under the circumstances, we conclude that Ms. Johnson is entitled to an additional award of $1,000.00 for attorney's fees.
Accordingly, we affirm the trial court's judgment on liability and quantum and award Ms. Johnson attorney's fees. Costs of this appeal are assessed to Mr. Drury.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The Federal Savings and Loan Insurance Corporation (FSLIC) placed Security Homestead Association in conservatorship. The FSLIC was disbanded by Congress and the Resolution Trust Corporation (RTC) succeeded to the FSLIC's rights. Under federal legislation, the RTC expired and the FDIC succeeded to all of the rights of the RTC.
[2] D'Oench, Duhme & Co. v. Federal Deposit Ins. Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and codified in 12 U.S.C. 1823(e).