290 So.2d 438 (1974)
Mrs. Albon R. BROOKS et al.
v.
SOUTHWAY FURNITURE COMPANY et al.
No. 6036.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Rehearing Denied March 8, 1974.
Writs Refused April 29, 1974.
*439 Morphy, Freeman, Holbrook & Faulkner, A. D. Freeman, Jr., New Orleans, for third party defendant/third party plaintiff-appellant, L. O. Murrell, Sr.
Porteous, Toledano, Hainkel & Johnson, William A. Porteous, III, New Orleans, for third party plaintiff-appellant, K. C. McGee, Sr.
Organ & Pierce, Donald M. Pierce, New Orleans, and Stephen R. Perez, Chalmette, for plaintiffs-appellees.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Curtis R. Boisfontaine, New Orleans, for third party defendant-appellee Ray Chatelain.
Charles A. Arceneaux, New Orleans, for third party defendant-appellee Guy Hyman.
Before SAMUEL and REDMANN, and Bailes, J. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
This is a tort action filed by plaintiffs, Mrs. Albon R. Brooks and her husband, to recover damages allegedly sustained by them when Mrs. Brooks was struck on the head by a lighting fixture which fell from the ceiling of the defendants' premises. Plaintiffs instituted suit against defendants, Southway Furniture Company, Inc. (Southway), occupier of the premises, and Mr. K. C. McGee, Sr., owner of the premises. McGee, by third party petition, sued Southway, Mr. L. O. Murrell, lessee of the premises, and Raymond Chatelain, an electrician who performed electrical work on the premises, for indemnification for any judgment awarded against him. Murrell third partied Raymond Chatelain and Guy Hyman, another electrician who did work on the premises.
After a trial on the merits, judgment was awarded against defendants McGee and Southway in favor of plaintiff Albon R. Brooks in the sum of $1,068 and in favor of Mrs. Albon R. Brooks in the sum of $4,500.
Third-party plaintiff, McGee, was awarded indemnity against third-party defendants, L. O. Murrell and Southway in the full amount of the above awards. Prior to this judgment, Southway was adjudged a bankrupt. Both McGee and Murrell have appealed.
Finding the judgment appealed is correct, we affirm.
The facts of this case are as follows:
McGee leased the premises where the accident occurred to Murrell. Murrell formerly operated a Western Auto Store on the premises until his lease terminated in early summer of 1965. Hurricane Betsy swept through the area in September, 1965, during which the building sustained extensive damage to the front portion and the roof. The entire interior suffered heavy flood damage.
Murrell negotiated a new lease after the hurricane and subleased the premises by verbal contract to Southway, a company of which he was president and one-third owner.
*440 McGee replaced the entire roof of the building and some plate glass windows in the front. Murrell undertook all repairs to the interior of the building. The damage to the front portion of the building necessitated the installation of new lighting fixtures in that area. The testimony indicates that Murrell hired Raymond Chatelain to do any rewiring necessary to the building to satisfy electrical wiring specifications required by the Parish. It was shown that no lighting fixtures in the rear portion of the building were either repaired or replaced.
Testimony established that repairs were completed and the store was opened for business only a short time before plaintiff sustained her injury. Plaintiff and her husband were shopping in the rear portion of the building when a lighting fixture fell from the ceiling and struck her on the head.
Both defendants base their defense on the lease contract existing between them. In particular, they rely on a clause in the lease by which the lessee assumes the responsibility for the condition of the premises and for damages caused by any vices or defects of the premises. The clause provides that:
"Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties."
McGee contends that the above clause is in conformity with LSA R.S. 9:3221 which states:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."
He claims that he had neither actual nor constructive knowledge of any defect on the premises and that any liability for the plaintiff's injury rests with the lessee, Murrell.
Murrell joins in McGee's allegations and contends that since McGee is not liable for plaintiff's injury, there are no damages for which he must indemnify McGee. In fact, Murrell admits his liability to McGee by reason of the hold harmless clause in the lease between them.
Although no written reasons were given for the trial court's decision, it was apparently based on a finding that McGee had at least constructive knowledge of the defects in the building. The hold harmless clause in the lease and LSA R.S. 9:3221 could not shield him from liability. We agree with this finding and also the decision that Murrell was bound to indemnify McGee to the extent of the damages assessed against him under the third party pleadings.
Evidence at trial established that McGee had full knowledge of the damage to the building after hurricane Betsy. He contracted and paid for the installation of a new roof on the building and replacement of the plate glass windows on the front of the building. It indicated that he must have been aware of the extent of interior damage to the building, since he and Murrell negotiated the plan by which Murrell would undertake the interior repairs and he the exterior repairs. Thus charged with this knowledge, it was his duty to *441 make sure that the building was restored to a safe condition.
The trial court further decided in favor of McGee's third party demand for indemnity from Murrell. We find it was negligence on Murrell's part in failing to have the lighting fixtures in the rear of the store inspected before opening the store to the public. His own testimony by deposition established that he was well aware of the extent of damage done by the hurricane and the flooding, that he made frequent visits to the building while the repairs were in progress and that he hired Raymond Chatelain to do the wiring necessary to satisfy electrical wiring regulations required by the Parish. He did not know if the fixtures in the rear were ever inspected after the hurricane but stated that he made a sight inspection of them while standing on the floor. Murrell undertook the task of returning the interior to a safe condition and his negligence in completing this task renders him liable for any damages assessed against McGee as a result of the plaintiff's injury.
The trial court correctly found no liability on the part of the two electricians. It was established that Mr. Hyman originally installed the fixture in question prior to the hurricane and had performed no work on the premises since. It was proved that Mr. Chatelain was hired only to make repairs necessary for the building to meet Parish regulations. He testified that he asked Murrell if he should inspect or rehang the fixtures in the rear portion of the building and was told that it was not necessary.
With reference to quantum, the court took cognizance of the depositions of the plaintiff's treating physicians and their conclusions that plaintiff had suffered traumatic labyrinthitis as a result of the accident. This condition is an inflammation of the equilibrium mechanism of the middle ear causing labyrinth vertigo. Plaintiff was treated for neck pains, headaches and periodic losses of equilibrium.
The medical testimony established that recovery from this condition would normally take from six weeks to six months. While plaintiff underwent treatment for approximately six years, many of her ailments were unrelated to the accident.
From the record before us we find no manifest error in the quantum and that the awards of the district court are adequate and reasonable.
For the foregoing reasons, the judgment of the trial court is affirmed.
Affirmed.
REDMANN, Judge (concurring).
I do not agree that Murrell admits liability to McGee under the lease. In my opinion the lease would not make Murrell liable. I agree that Murrell is liable because of his breach of his contract to make necessary interior repairs.