499 So.2d 252 (1986)
Kenneth R. COATES
v.
NORTHLAKE OIL COMPANY, INC., et al.
No. 85 CA 0969.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
Rehearing Denied January 12, 1987.
Writ Denied March 20, 1987.
*253 Joseph R. McMahon, Jr., New Orleans, for appellant Sentry Ins., A Mut. Co., alleged insurer of Privette.
Guy L. Deano, Jr., Covington, for appellees Privette Oil Co. and Richard Privette.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
William Richard Privette, Jr., (Privette) and his mother, Juanita Hawley Privette, owned a gasoline bulk storage plant on Tyler Street in Covington, Louisiana, which had been built during the 1920's. On July 12, 1979,[1] Privette leased the plant for a term of three years to David Winck for a monthly rental of $100.00. David Winck then subleased the plant on July 14, 1979, to his father, Merlin Winck, for the same term and rental. Merlin Winck then operated his closely held corporation, Northlake Oil Co., Inc., (Northlake), on those premises.
On December 10, 1981, a deputy Louisiana state fire marshal inspected the premises and found numerous serious violations. A copy of the report was sent to Northlake. David Winck called Privette and mailed a copy of the report to him, but Privette contended that the repairs were the Wincks' responsibility under the lease and refused to take action. The Wincks, whose lease was to terminate in a few months, maintained that these costly repairs were Privette's responsibility and also refused to correct the violations.
Early in the morning on May 29, 1982, Kenneth R. Coates (Coates), an employee of Stephens Truck Line, Inc., (Stephens), assisted by David Winck, was unloading gasoline from his truck into an aboveground storage tank on the Tyler Street premises. He testified that he noticed a fog of gasoline vapor, then saw gasoline spewing from the tank. At that moment, the plant exploded. Both Coates and David Winck were severely burned.
Coates filed suit against Northlake, David and Merlin Winck, Privette Oil Co.,[2] Richard Privette,[3] Juanita Privette, and Sentry Insurance A Mutual Company (Sentry).[4] *254 Sentry was sued in its capacity as insurer of Northlake and Merlin Winck as well as insurer of the Privettes. David Winck then reconvened against Coates and added as defendants in reconvention Stephens and all previously named defendants.[5]
After trial, the jury returned a verdict in favor of Coates and David Winck in the sums of $701,129.00 and $554,665.00, respectively. Liability was apportioned among the parties as follows: Richard and Juanita Privette and Privette Oil, 50%; Northlake, 20%; Merlin Winck, 20%; and David Winck, 10%. Only Sentry, in its capacity as the alleged liability insurer of the Privettes, has appealed.
Although the facts of this case are complex, only one issue is presented on this appeal: Did Sentry provide umbrella liability coverage to the Privettes and, if so, in what amount? Sentry contends that the Privettes have no coverage for liability arising from their ownership of the Tyler Street property because that property was not expressly mentioned in the policy. The Privettes contend, however, that it was unnecessary to list the locations of the premises insured under the umbrella policy because coverage was provided for any property in the policy territory, as defined in the policy.
Sentry issued a policy of insurance to Richard and Juanita Privette which provided property, liability, and umbrella liability coverage. Each portion of the policy contained a separate declarations sheet which listed the policy limits. The declarations sheets of the property and liability portions also listed the locations of the insured premises. The Tyler Street property was not among the listed premises. The umbrella liability declarations sheet contained no listing of insured locations; it stated simply that "coverage applies anywhere in the policy territory, which is defined in the Conditions." "Policy territory" was then defined under "Special Conditions": "This section covers in the United States of America, its territories or possessions and Canada."
The property, liability, and umbrella provisions of the Sentry policy are clearly separate. Each contains its own limits, exclusions, definitions, and conditions. The umbrella policy was not intended to insure particular locations; the declarations sheet, a printed form prepared by Sentry, does not even contain an area to list insured locations. Thus, the fact that no property or liability coverage on the Tyler Street property was obtained by the Privettes is irrelevant; umbrella liability coverage is applicable because this accident occurred within the policy territory.
Having determined that the trial court was correct as a matter of law in finding that Sentry did provide umbrella coverage, we must now examine the extent of that coverage. The Insuring Agreements section of the umbrella policy provided:
B. Underlying Limit; Retained Limit: We shall be liable only for "net loss" resulting from any one occurrence in excess of either
1. the amounts of the applicable limits of liability of the underlying insurance as stated in the Declarations less the amount, if any, by which any aggregate limit of such insurance has been reduced by payment of loss, or
2. if the insurance afforded by underlying insurance is inapplicable to the occurrence, the amount stated in the Declarations as the retained limit.
Underlying limits of $500,000.00 and a retained limit of $10,000.00 are listed in the Declarations. Although counsel for Sentry argued at trial that the Privettes were required to pay the first $500,000.00 in damages because the underlying limits were "applicable," the trial court held that the *255 umbrella policy provided coverage to the Privettes "in the amount of a million dollars, less a $10,000 deductible" because the Tyler Street property was not "listed on any basic coverage." Sentry assigns as error the trial court's ruling on this legal issue.
An insurance policy is a contract, and the rules established for the construction of written instruments apply to contracts of insurance. Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 (1948); Dean v. Union National Fire Insurance Co., 301 So.2d 925 (La.App. 2d Cir.1974). The Louisiana Civil Code defines interpretation of a contract as "the determination of the common intent of the parties." LSA-C.C. art. 2045. Thus, the intention of the parties is of paramount importance in interpreting insurance contracts. Their intention is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939); Bunch v. Frezier, 239 So.2d 680 (La.App. 1st Cir.1970). An insurance contract should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Zurich Insurance Co. v. Bouler, 198 So.2d 129 (La.App. 1st Cir.1967).
Sentry contends that the trial court's interpretation of the policy ignores the intent of the parties and leads to absurd consequences, that is, it rewards an insured for failing to secure underlying coverage. Sentry contends that when it issued an umbrella liability policy to the Privettes it never intended to provide, and the Privettes never intended to receive, primary liability coverage for all damages in excess of $10,000.00 on any and all property which the Privettes owned but failed to insure with underlying liability coverage.
The testimony of Richard Privette supports this contention. Privette testified that his intent in leasing the Tyler Street property to David Winck for only $100.00 per month was to free himself from all responsibility for insurance and maintenance. He further testified that he had no liability insurance on the property on the date of the accident.[6] This contention is further supported by the fact that Sentry issued a policy providing $1,000,000.00 coverage for an annual premium of only $375.00.
Sentry further contends that the trial court's interpretation of the policy ignores the common meaning of the term "retained limits." Umbrella liability insurance is a broad blanket excess legal liability contract which fills the gaps in an insured's liability program. A standard feature of umbrella policies is that the amount an insured is required to pay before the coverage takes effect is much lower in those areas not covered in the primary policy. This feature means that (1) coverage is provided which would otherwise have required separate policies and (2) exclusions in primary coverage are, in effect, eliminated for losses above this lower amount. The lower amount is commonly known in the insurance industry as the "retained limit." J. Long and D. Gregg, Property and Liability Insurance Handbook 603 (1965).
The whole theory of umbrella insurance is that the insured protects himself against catastrophic loss by the procurement of insurance coverage which takes up where his primary policy leaves off. Thus, umbrella coverage is to be regarded as true excess over and above any type of primary coverage. Safeco Insurance Co. v. Insurance Company of North America, 522 S.W.2d 867, 869 (Tenn.1975); 8A J. Appleman and J. Appleman, Insurance Law and Practice, § 4909.85 at 453-54 (Rev. ed. 1981). The trial court's interpretation of the umbrella policy to provide primary coverage *256 when the insured has failed to secure underlying coverage was clearly wrong.
The logical interpretation of this policy is that the retained limit of $10,000.00 applies only if basic liability coverage is "inapplicable," i.e., if coverage for the loss is excluded by the standard primary liability policy. The loss in this case would have been covered by primary liability if such coverage had been secured by the Privettes, and, in fact, coverage was provided under the basic liability policy secured by Merlin Winck. Thus, the Privettes are exposed to up to $500,000.00 of plaintiffs' claims herein, the "amounts of the applicable limits of liability of the underlying insurance as stated in the Declarations," before reaching the $1,000,000.00 limits of the Sentry umbrella policy.
The Privettes, in the answer to appeal, contend that the jury erred in assessing 50% liability against them based on strict liability and negligence. They contend that under the lease agreement David Winck assumed all responsibility for maintenance, which responsibility was then assumed by Merlin Winck under the sub-lease.
The lease from Privette to David Winck provided:
The within leased premises and appurtenances, including the locks, keys, plumbing, glass, elevator, air-conditioning and heating system, if any, and all other fixtures, are accepted by the Lessee in their present condition, except for such repairs and improvements as are written into this lease. The Lessee agrees to keep them in the same order as received during the term of this lease and no repairs shall be due Lessee except such as may be especially noted herein or rendered necessary by fire or other casualty;... and to comply at the Lessee's expense with all ordinances and laws, now existing or to be enacted....[7]
The lease further provided:
Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
The Privettes contend that the Wincks were obligated to remedy the fire code violations under the terms of the lease, particularly the obligation under the lease to comply with all ordinances and laws. They further contend that although Privette received a copy of the fire marshal's report and discussed the defects with the Wincks by telephone, they did not receive formal written notice as required by the lease.
The controlling law is found in LSA-R.S. 9:3221:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time. (Emphasis added.)
This statute permits the delegation by a lessor to a lessee of responsibility for defects of which the lessor has notice, either actual or constructive, by the inclusion of exculpatory language in the lease. Tassin v. Slidell Mini-Storage, 396 So.2d 1261 (La.1981); Davis v. A Copeland Enterprises, 390 So.2d 891 (La.1980); Brooks v. Southway Furniture Co., 290 So.2d 438 (La.App. 4th Cir.1974), writs denied, 293 So.2d 188 (La.1974). In Brooks, however, a *257 lessor who had constructive notice of a defect was held liable to an injured third party despite a requirement in the lease for formal written notice identical to that in the Privette-Winck lease. Since Privette himself testified that he had actual notice of the defects, the jury was not clearly wrong in finding the Privettes were 50% at fault for the plaintiffs' injuries.
For the foregoing reasons, we affirm the jury's apportionment of liability and the portion of the judgment of the trial court which holds that the Sentry policy afforded umbrella liability coverage to the Privettes. We reverse that portion of the judgment which holds that the Privettes are required to pay only the first $10,000.00 of the claims of plaintiff and plaintiff in reconvention. Judgment is hereby rendered in favor of Sentry and against the Privettes declaring that the policy of umbrella liability insurance issued to Richard and Juanita Privette provided liability protection for the Tyler Street premises only for that portion of the judgment against the Privettes in excess of $500,000.00. Costs of this appeal are taxed to the Privettes.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Although the lease is dated July 31, 1979, the lease began on July 15, 1979, and an act of sale executed contemporaneously with the lease is dated July 12, 1979.
[2] Privette Oil Co. was erroneously sued as "Privette Oil Co., Inc." Privette Oil was not incorporated until after the accident. At the time of the accident, Richard Privette was doing business under the trade name "Privette Oil Company Unincorporated."
[3] Apparently Richard Privette has died since this appeal was lodged. Although no motion for substitution has been filed pursuant to LSA-C.C.P. arts. 801 and 802 and Uniform RulesCourts of Appeal, Rule 2-9, the answer to appeal was filed by Guy L. Deano, Jr., Testamentary Executor of the Succession of William Richard Privette, Jr.
[4] Sentry was erroneously sued as "Sentry Insurance Company."
[5] The various other reconventional demands, interventions and third party demands which were filed in this case will not be discussed herein because they are not relevant to this appeal.
[6] The property was not uninsured for basic liability, however. Merlin Winck secured a basic liability policy with Sentry that provided $500,000.00 coverage per occurrence.
[7] No repairs or improvements were written into the lease.