589 So.2d 526 (1991)
JIM CAREY DISTRIBUTING CO., INC.
v.
Laura Lee, Wife of/and Samuel ZINNA and American Family Home Insurance Company.
No. CA 90 1065.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
*527 Maurice LeGardeur, Covington, for plaintiff-appellant.
Alton Lewis, Jr., and Tom Hogan, Hammond, for defendant-appellee Laura Lee Zinna, et ux.
James E. Moore, Baton Rouge, for defendant-appellee American Family Home Ins. Co.
Christopher Wilkins, Baton Rouge, for defendant-appellee Travelers Ins. Co.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
GONZALES, Judge.
This suit was filed by Jim Carey Distributing Company, Inc., against its office manager, Laura Lee Zinna, for the return of funds which she embezzled from the company. Plaintiff also seeks judgment against Mrs. Zinna's homeowner insurer, American Family Home Insurance Company. The trial judge found that the defendant's homeowner's policy did not cover embezzlement by the homeowner of her employer's funds, and summary judgment was granted in favor of American Home Family Insurance Company. Plaintiff is appealing that judgment.
Plaintiff makes the following assignments of error:
1. The trial court erred in interpreting an ambiguous insurance policy in favor of an insurer.
2. The trial court was in error when it liberally construed several policy exclusions in favor of an insurer.
3. The trial court erred in granting summary judgment when there was insufficient evidence to establish an absence of genuine issues of material fact.

FACTS
Mrs. Zinna worked for Jim Carey Distributing Company from July 1979 through June 1989. She was apparently an exemplary employee until July of 1988, at which time she began taking money from her employer in order to gamble. Mrs. Zinna confessed to her employer in January of 1989 and was terminated by her employer. An audit of plaintiff's business was conducted and it was determined that from July, 1988, through January, 1989, Mrs. Zinna had taken small amounts of money at a time from her employer which added up to a total of $63,812. Mrs. Zinna had access to funds because she collected money turned in by truck drivers, stored the money in a safe under her desk during the day, and then turned the funds over to a security guard to be deposited at the end of the day. Mrs. Zinna concealed her embezzlement by writing out deposit slips which reflected the amount of money deposited with her, minus the amount she kept. Mrs. Zinna used the embezzled funds to gamble, and several times after winning she repaid small amounts back to the company.

THE PROPERTY DAMAGE PROVISION OF THE POLICY
The American Family Home Insurance policy at issue provides for the defense and payment of any claims for damages because of bodily injury or property damage to which the coverage applies. Clearly, this is not a suit for bodily injury, therefore, plaintiff's claim must come under the "property damage" definition in the policy in order to be covered. The policy defines property damage as "Physical damage or destruction of tangible property, including loss of use." Plaintiff, Jim Carey Distributing Company, argues that although the *528 funds were not destroyed, they should be covered under the "loss of use" provision of the policy.
The intention of parties to an insurance contract is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance policy should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Coates v. Northlake Oil Company, Inc., 499 So.2d 252 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987). The words of insurance contracts and policies should be given their general and popular interpretation and not that which is strained and unusual. Schmieder v. State Farm Fire & Casualty Co., 339 So.2d 390 (La.App. 1st Cir.1976), application denied, 341 So.2d 895 (La. 1977). Loss of use within an insurance contract contemplates compensation for that period of time required by the exercise of proper diligence to secure repairs to tangible property which has been damaged. Carroll v. State Farm Insurance Company, 427 So.2d 24 (La.App.3d Cir.1983). This court finds that the property damage through loss of use provision in the homeowner's policy was clearly not intended to cover funds embezzled by the homeowner from her employer.
Even in the event that the theft of the funds could be considered property damage through loss of use, several other exclusions in the policy would prevent coverage. The policy excludes coverage for intentional acts by an insured, for acts arising out of professional or business pursuits of an insured, and for property damage to property in the care of an insured person.
THE INTENTIONAL ACTS EXCLUSION
The liability policy provides in part:
Under personal liability coverage and medical payments to others coverage, we do not cover bodily injury or property damage:
(a) Which is expected or intended by the Insured Person.
Plaintiff urges that Mrs. Zinna's embezzling does not fall into the intentional act exclusion of the policy by alleging her acts were "involuntary" and were done to "support a gambling habit which had become uncontrollable to her." The plaintiff cites Breland v. Schilling, 550 So.2d 609 (La.1989) as authority for its contention that "A finding of coverage hinges entirely on whether the damages sustained by the plaintiff were subjectively intended or expected by the insured." In Breland, the court found a homeowner's policy which barred coverage for bodily injury did not exclude coverage for plaintiff's injury where defendant hit plaintiff and broke his jaw but testified he had intended to inflict only a minor injury, rather than a severe injury, upon plaintiff. Breland is an unusual case and is limited to its facts. It is not applicable to the case sub judice. Plaintiff also states that "Only as Mrs. Zinna's gambling became increasingly obsessive, and her losses mounted, did she become aware that she would not be able to return all of the funds which she had taken." It was precisely at this point at which Mrs. Zinna became "aware" that she could not repay all of the funds that the taking became an intentional tort and a conversion. The damage became "intended" when she realized she could not pay the money back. This Court finds that Mrs. Zinna's actions in converting her employer's funds to her own use by taking small amounts of money from her employer at a time over the course of some six months and repaying small amounts at a time with gambling winnings was intentional and is excluded from coverage under her homeowner's policy by the intentional acts exclusion.
THE BUSINESS PURSUITS EXCLUSION
The policy also provides:
Under personal liability coverage and medical payments to others coverage we do not cover bodily injury or property damage:

*529 (b) arising out of business or professional pursuits of any insured person ..."
Mrs. Zinna was an employee of Jim Carey Distributing Company, and her duties included the receipt and safeguarding of funds. While in the course and scope of this employment, she embezzled from her employer. But for this employment (the business pursuit) these acts of theft could not have occurred. There could be not a more clear showing that the loss in question arose out of Mrs. Zinna's business pursuit, therefore this exclusion would prevent coverage even if Mrs. Zinna's embezzlement could be considered property damage through loss of use.

THE EXCLUSION FOR PROPERTY IN THE CARE OF AN INSURED PERSON
A third exclusion in the policy provides:
(2) personal liability coverage does not apply to:
(c) Property damage to property rented to, occupied or used by or in the care of an insured person.
Mrs. Zinna had the responsibility of collecting money from truck drivers, counting the money, making deposit slips and keeping the money in a safe under her desk until handing it over to a security guard for deposit in the company bank account. The money which Mrs. Zinna collected daily for the company was in her care, and she was an insured person under her homeowner's policy, therefore clearly this policy excludes coverage for Mrs. Zinna's embezzlement of funds which were entrusted to her care by her employer.
The plaintiff's assignments of error have no merit.
This Court finds that the embezzlement of funds by Mrs. Zinna from her employer is clearly not covered by her homeowner's insurance policy because it does not fall within the property damage provision; and furthermore, even if it did fall under the property damage provision, each of the three policy exclusions raised by defendant prevents coverage. The trial court judgment is affirmed for the foregoing reasons. All costs are assessed to plaintiff-appellant.
AFFIRMED.