DOUCET, Judge.
The Guardian Life Insurance Company of America (Guardian) appeals a district court judgment finding health insurance *1090 coverage in connection with two separate claims made by the plaintiff. Guardian also appeals the district court’s award of penalties and attorney’s fees.
The .plaintiff, Cindy Landos, was employed by St. Landry Juvenile Services, Inc., a quasi-governmental agency involved in juvenile rehabilitation. As an employee of St. Landry Juvenile Services, Ms. Láñe-los was covered under a group health insurance policy provided by Guardian.
In 1987, Ms. Landos became pregnant with her first child. In August, she went into premature labor. She was hospitalized and given medication to stop her labor. In early September, Ms. Landos was again hospitalized with premature labor. The placenta separated (placenta abrupta) and her son was delivered prematurely.
In 1990, Ms. Landos again became pregnant. In June 1990, she again went into premature labor. As a result, a child, Johnathan, was born prematurely and died only four hours after his birth. Guardian refused to pay benefits for Ms. Landos’ 1987 delivery and for Johnathan’s care and treatment. As a result, Ms. Landos filed this suit to recover benefits plus penalties and attorney’s fees under La.R.S. 22:657.
After a trial on the merits, judgment was rendered in favor of Ms. Landos on both claims and for penalties and attorney’s fees. Guardian appeals.
ERISA
Guardian first argues that the policies issued to St. Landry Juvenile Services, Inc. were governed by ERISA. It argues that, as a result, the trial court was, in fact, a reviewing court and applied the wrong standard of review. Additionally, they argue that penalties and attorney’s fees are not available where ERISA applies. ERISA applies to certain employee benefit plans. Employee benefit plans are defined by 29 U.S.C.S. § 1002 as follows:
For purposes of this title:
(1) The terms “employee welfare benefit plan” and “welfare plan” mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 802(c) of the Labor Management Relations Act, 1947 [29 USCS § 186(c)] (other than pensions on retirement or death, and insurance to provide such pensions).
(2)(A) Except as provided in subpara-graph (B), the terms “employee pension benefit plan” and “pension plan” mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
(i) provides retirement income to employees, or
(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. (B) The Secretary may by regulation prescribe rules consistent with the standards and purposes of this Act providing one or more exempt categories under which—
(i) severance pay arrangements, and
(ii) supplemental retirement income payments, under which the pension benefits of retirees or their beneficiaries are supplemented to take into account some portion or all of the increases in the cost of living (as deter *1091 mined by the Secretary of Labor) since retirement,
shall, for purposes of this title, be treated as welfare plans rather than pension plans. In the case of any arrangement or payment a principal effect of which is the evasion of the standards or purposes of this Act applicable to pension plans, such arrangement or payment shall be treated as a pension plan.
(3)The term “employee benefit plan” or “plan” means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.
Plans covered by ERISA are delineated in 29 U.S.C.S. § 1003:
(a) Except as provided in subsection (b) and in sections 201, 301, and 401 [29 USCS §§ 1051, 1081, and 1101], this title shall apply to any employee benefit plan if it is established or maintained—
(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
(3) by both.
(b) The provisions of this title shall not apply to any employee benefit plan if—
(1) such plan is a governmental plan (as defined in section 3(32) [29 USCS § 1002(32)]);
(2) such plan is a church plan (as defined in section 3(33) [29 USCS § 1002(33) ]) with respect to which no election has been made under section 410(d) of the Internal Revenue Code of 1986 [26 USCS § 410(d)];
(3) such plan is maintained solely for the purpose of complying with applicable workmen’s compensation laws or unemployment compensation or disability insurance laws;
(4) such plan is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens; or
(5)such plan is an excess benefit plan (as defined in section 3(36) [29 USCS § 1002(36)]) and is unfunded.
The burden of proving an ERISA pre-emption lies with the defendant. Settles v. Golden Rule Insurance Company, 927 F.2d 505 (C.A. 10th Cir.1991). An employer’s purchase of insurance or payment of premiums is not alone enough to establish a plan, fund, or program. Kidder v. H. & B. Marine, Inc., 932 F.2d 347 (C.A. 5th Cir.1991); Donovan v. Dellingham, 688 F.2d 1367 (C.A. 11th Cir.1982).
After reviewing the record as a whole, we find nothing of record that would tend to prove that an ERISA pre-emption applies here. In the absence of proof, the provisions of ERISA will not be applied to Ms. Landos’ claim.
COVERAGE
Guardian next argues that the policies did not provide coverage for the claims made by Ms. Landos.
La.C.C. art. 2046 provides that:
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.
The court in Joe Carey Distributing Co. v. Zinna, 589 So.2d 526, 528 (La.App. 1st Cir.1991), stated that:
The intention of parties to an insurance contract is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance policy should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Coates v. Northlake Oil Company, Inc., 499 So.2d 252 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987). The words of insurance contracts and policies should be given their general and popular interpretation and not that which is strained and unusual. *1092 Schmieder v. State Farm Fire & Casualty Co., 339 So.2d 390 (La.App. 1st Cir.1976), application denied, 341 So.2d 895 (La.1977).
1987 CLAIM
It is undisputed that in 1987, the policy under which Ms. Landos was covered provided that:
ATTACHED TO AND MADE PART OF GROUP INSURANCE POLICY NO. G-093690-HC
issued by
The GUARDIAN Life Insurance Company of America
(herein called the Insurance Company)
to
Trustees of the Professional and Technical Services Industry Insurance Trust Fund
WITH RESPECT TO
ST. LANDRY JUVENILE SERVICES, INC.
(herein called the Policyholder)
It is hereby agreed, effective September 1st 1980, that the Group Policy is amended so that item (3) of the “Major Medical Expense Benefits” provision entitled “Charges Not Covered and Other Limitations” is deleted and replaced by the revised corresponding item (3) which follows:
(3) Charges for pre-natal care, delivery, and post-partum care in connection with routine pregnancies. However, charges incurred in connection with complications of pregnancy (as defined below), which are in excess of those which would have been incurred in the absence of such complications and which are otherwise within the definition of Covered Charges, will be deemed Covered Charges provided the pregnancy had its inception while the Covered Person was insured under these Major Medical Expense Benefits.
Complications of Pregnancy shall mean (1) conditions (when the pregnancy is not terminated) whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy, such as acute nephritis, ne-phrosis, cardiac decompensation, missed abortion (and similar medical and surgical conditions of comparable severity,) but shall not include false labor, occasional spotting, physician prescribed rest during the period of pregnancy, morning sickness, hyperemesis gravida-rum, pre-eclampsia and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy: and (2) non-elective cesarean section, ectopic pregnancy which is terminated and spontaneous termination of pregnancy, which occurs during a period of gestation in which a viable birth is not possible.
This Rider shall form a part of the Policy. Except as stated in this Rider, nothing contained herein shall be held to alter or affect any of the provisions of the Policy, including any prior Riders, Amendments, or Endorsements,
(emphasis in record copy of document)
Under this provision maternity benefits for routine pregnancies are excluded, but it allows benefits for certain complications of pregnancy “and similar medical and surgical conditions of comparable severity.” The policy excludes certain other complications “and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy....”
It is not clear from the policy into which category of complication premature labor would fall. However, Dr. Jerome M. Broussard testified as to the difference between the covered and excluded complications. His testimony indicates that acute nephritis, nephrosis, and cardiac decompen-sation can be brought on by pregnancy but also occur outside of pregnancy. However, *1093 each of the excluded complications occurs only in pregnancy.
Since premature labor occurs only in pregnancy, it would not be covered under this provision. Accordingly, the trial judge erred in awarding benefits, penalties and attorney’s fees for this claim.
1990 CLAIM
At the time of Ms. Landos’ second pregnancy in 1990, a different policy was in effect. Guardian denied benefits in connection with the care of her infant son, Johnathan, who died only a few hours after his birth.
Guardian cites the following policy provisions with respect to coverage of a newborn:
We cover a newborn child, for dependent health benefits from the moment of his birth, if: (a) the employee is already insured for dependent coverage when the child is born; or (b) the child is his first eligible dependent, and the employee applies for dependent coverage within 31 days of the child’s birth and meets any proof of insurability requirements this plan has.
Subject to all the terms of this plan and such coverages, we’ll pay for the care and treatment of a sick, injured or premature covered newborn child. And we’ll pay for the care and treatment of a child born with a functional birth defect. But unless this plan provides specific benefits, we don’t pay for the routine care of a healthy newborn child.
Guardian argues that since Ms. Landos was not already insured for dependent coverage and did not apply for dependent coverage within 31 days of Johnathan’s birth, they are not obliged to pay for his care. This, however, would lead to an absurd result in requiring a parent to apply for dependent coverage including proof of in-surability for a dead child.
There is nothing else in the policy which resolves the question of coverage in this situation. La.C.C. art. 2056 states that:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Therefore, this provision must be interpreted against Guardian.
Accordingly, the trial judge correctly awarded benefits for the care of Johnathan.
PENALTIES
Guardian bases its argument against the imposition of penalties and attorney’s fees on ERISA, which we have already decided is inapplicable to this case.
After reviewing the record, we find no reasonable ground for refusing to pay benefits for the care of Johnathan Landos. As a result, the trial judge correctly awarded penalties and attorney’s fees on that claim under La.R.S. 22:657. Additionally, plaintiff is entitled to additional attorney’s fees for the appeal of this matter. We believe $750 represents a reasonable fee for the efforts involved.
Accordingly, the judgment of the trial court is reversed with regard to the 1987 claim, and affirmed with regard to the 1990 claim. Judgment is additionally rendered in the amount of $750, representing attorney’s fees on appeal. Costs of this appeal are to be divided between the parties.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.