657 So.2d 660 (1995)
Mary DUNN,
v.
POTOMAC INSURANCE COMPANY OF ILLINOIS and William Thibodeaux, Individually and/or d/b/a Forrest Builders and/or d/b/a Forrest Brothers.
No. 94 CA 2202.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*661 Ronald J. Favre, Slidell, for plaintiff/appellant #3 Mary Dunn.
C. Michael Pfister, Metairie, for defendants/appellants # 1 William Thibodeaux, Individually and/or d/b/a Forrest Builders.
James L. Donovan, Metairie, for defendants/appellants # 2 William Thibodeaux & USF & G.
Brian T. Carr, Metairie, for defendant Potomac Ins. Co.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a tort suit for damages.

FACTS
On or about December 27, 1990, petitioner, Mary Dunn, was a guest at 170 Pirates Harbor[1] in Slidell, Louisiana. Defendant, William Thibodeaux, owned the Pirates Harbor premises where he resided and had a place of business. On that day, as Dunn was leaving the Pirates Harbor premises, she allegedly slipped and fell on a foreign substance located on the stairs leading from the building. As a result of this fall, Dunn allegedly sustained injuries.
On September 4, 1991, Dunn filed the instant suit for damages against Thibodeaux, individually and as William Thibodeaux d/b/a Forrest Builders or Forrest Brothers, and *662 Potomac Insurance Company of Illinois (Potomac), liability insurer of Thibodeaux, Forrest Builders, or Forrest Brothers. Potomac thereafter filed a third party demand against United States Fidelity & Guaranty Insurance Company (USF & G), seeking indemnity or contribution. In its third party demand, Potomac alleged that USF & G issued a policy of liability insurance for Thibodeaux and Forrest Builders or Forrest Brothers for the Pirates Harbor premises. Dunn subsequently amended her petition to name USF & G as an additional defendant.
On May 5, 1993, Thibodeaux, individually and d/b/a Forrest Builders, filed a cross claim against Potomac and USF & G, requesting indemnity and contribution. Thibodeaux alleged that he was made an original defendant in the proceedings filed by Dunn, and that USF & G issued a policy of insurance to him, individually and as Forrest Builders, providing coverage for the allegations set forth in Dunn's petition. Thibodeaux also alleged that Potomac issued a policy of insurance to him, individually and as Forrest Builders, providing coverage for the allegations set forth in Dunn's petition.
On May 25, 1994, Potomac filed a motion for summary judgment on the grounds that its policy did not afford coverage for the alleged accident or for the injuries allegedly sustained by Dunn. In support of its motion for summary judgment, Potomac attached excerpts of the depositions of Dunn and Thibodeaux and a copy of the Potomac policy.
Thibodeaux and USF & G opposed the motion for summary judgment, attaching excerpts of Thibodeaux's deposition. Dunn also opposed the motion for summary judgment. In her opposition, Dunn attached excerpts of the Thibodeaux deposition and portions of the Potomac insurance policy. After a hearing on July 5, 1994, the trial judge granted Potomac's motion for summary judgment and dismissed Dunn's claims against Potomac at her cost. The judgment granting the motion for summary judgment was signed on July 8, 1994.
From this adverse judgment, Thibodeaux, USF & G, and Dunn appeal, assigning as the sole issue whether the trial court correctly granted Potomac's motion for summary judgment.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d *663 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, a Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

LIABILITY INSURANCE COVERAGE
The issue before the court is whether the policy issued by Potomac provided coverage to Thibodeaux and/or Forrest Builders for the injuries sustained by Dunn.
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Freyoux v. Estate of Bousegard, 484 So.2d 761, 762 (La.App. 1st Cir.), writ denied, 486 So.2d 753 (La.1986); Miller v. Duthu, 470 So.2d 500, 503 (La.App. 1st Cir.), writ denied, 474 So.2d 1310 (La.1985). Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. Epps v. City of Baton Rouge, 604 So.2d 1336, 1349 (La.App. 1st Cir.1992); Coates v. Northlake Oil Company, Inc., 499 So.2d 252, 255 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La. 1987). In other words, an insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Breland v. Schilling, 550 So.2d 609, 610 (La.1989).
The Louisiana Civil Code defines interpretation of a contract as "the determination of the common intent of the parties." LSA-C.C. art. 2045; Galjour v. Security Industrial Insurance Co., 618 So.2d 516, 518 (La.App. 4th Cir.1993); Thomas v. Kilgore, 537 So.2d 828, 830 (La.App. 5th Cir.1989). Thus, the intention of the parties is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety. Galjour v. Security Industrial Insurance Co., 618 So.2d at 518; Thomas v. Kilgore, 537 So.2d at 830; Coates v. Northlake Oil Company, Inc., 499 So.2d at 255.
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Epps v. City of Baton Rouge, 604 So.2d at 1349. Moreover, an insurance contract should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Coates v. Northlake Oil Company, Inc., 499 So.2d at 255.
If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Smith v. Matthews, 611 So.2d at 1379; Freyoux v. Estate of Bousegard, 484 So.2d at 762; Franklin v. J.A. Jones Construction Co., 391 So.2d 1321, 1323 (La.App. 4th Cir.1980). Stated another way, when the language of an insurance policy is clear and unambiguous, a *664 reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. Alford v. Kaiser, 589 So.2d 546, 548 (La.App. 1st Cir.1991), writ denied, 594 So.2d 893 (La.1992). No further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Galjour v. Security Industrial Insurance Co., 618 So.2d at 518. However, any doubtful provision in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy. Smith v. Matthews, 611 So.2d at 1379; Breland v. Schilling, 550 So.2d at 610; Avery v. Commercial Union Insurance Company, 621 So.2d 184, 189 (La.App. 3rd Cir.1993); Thomas v. Kilgore, 537 So.2d at 830. See Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991).
Interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Domingue v. Reliance Insurance Co., 619 So.2d 1220, 1223 (La.App. 3rd Cir.1993); Alford v. Kaiser, 589 So.2d at 548.
In the instant case, Potomac argues that its insurance policy is a business policy and that the USF & G policy is a personal policy. Potomac contends that Dunn's presence on the insured premises was in no way connected with Thibodeaux's business. As such, Potomac reasons that its policy does not afford coverage for Dunn's injuries. The opponents to the motion for summary judgment argue that Thibodeaux is a named insured under the policy, that the Potomac policy affords coverage for bodily injury resulting from an accident, and that there is no requirement in the policy that the bodily injury occur during the course of business. Accordingly, the opponents reason that the Potomac policy affords coverage for the injuries Dunn sustained.
The evidence produced at the hearing on the motion for summary judgment consisted of excerpts of the deposition testimony of Dunn and Thibodeaux and the policy of insurance issued by Potomac. The pleadings allege that Dunn slipped and fell on a foreign substance located on the stairs of the Pirates Harbor premises. In her deposition testimony, Dunn testified that she lived at the Pirates Harbor address with Thibodeaux and that she was moving her personal belongings at the time of the accident. In his deposition testimony, Thibodeaux testified that he was a self-employed contractor and operated under the name Forrest Builders. Thibodeaux testified that he built a home on the Pirates Harbor property, which he also used as an office. In describing the premises, Thibodeaux testified that the dwelling was raised in that the garage and cement dock were located downstairs and the residential and office spaces were located upstairs. Access to both the residential and office spaces of the dwelling was by means of exterior stairs. Thibodeaux further testified that he obtained the Potomac policy because the City of Slidell required a liability insurance policy for the issuance of his license to operate a business.
In determining whether the Potomac policy affords coverage to Thibodeaux d/b/a Forrest Builders for Dunn's injuries, we must examine the applicable policy provisions.[2]
The Master Craftsman Liability insurance policy issued by Potomac was in effect between March 1, 1990, and March 1, 1991. The Potomac policy defines "insured" as "any person or organization qualifying as such under SECTION CWho Is An Insured." Section C states, in pertinent part, as follows:
1. If you are designated in the Declarations as:
a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. (emphasis added).
The policy declarations list William J. Thibodeaux d/b/a Forrest Brothers as the named insured.
Under the wording of the Potomac insurance contract, the named insured, namely Thibodeaux d/b/a Forrest Builders, is entitled *665 to coverage under the policy with respect to the conduct of the business. In Smith v. Matthews, 611 So.2d at 1380, the court addressed the phrase "with respect to," noting that this phrase generally means "with reference to," "relating to," or "pertaining to." The Potomac policy provided Thibodeaux d/b/a Forrest Builders with liability coverage for those activities with reference to or relating to or pertaining to the conduct of business of Forrest Builders. The documents presented at the hearing on the motion for summary judgment show that the stairs on which Dunn was injured were used by Thibodeaux d/b/a Forrest Builders and by Thibodeaux personally. The allegations of Dunn's petition show that she allegedly slipped and fell as a result of a foreign substance located on those stairs. The evidence presented at the hearing on the motion for summary judgment does not resolve the origin of that substance and/or Forrest Builder's liability for the condition of the stairs, if any. However, any liability Thibodeaux d/b/a Forrest Builders may have clearly relates to or pertains to the conduct of the business of Forrest Builders.
For the purposes of determining whether the policy affords coverage to Thibodeaux d/b/a Forrest Builders, it is of no moment that Dunn was physically on the premises for personal reasons. Contrary to Potomac's argument, the policy does not require that Thibodeaux be engaged in the conduct of his business (Forrest Builders) when the injury is sustained.
In defining the term "insured," the policy requires only that the alleged liability relate to or pertain to the conduct of business of Forrest Builders. Coverage for business liability is addressed in Section A of the Master Craftsman Liability insurance policy, which provides as follows:
1. Business Liability. We will pay those sums that the insured become legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage ExtensionSupplementary Payments.
a. This insurance applies only:
(1) To "bodily injury" or "property damage":
(a) That occurs during the policy period; and
(b) That is caused by an "occurrence". The "occurrence" must take place in the "coverage territory".
(2) To "personal injury" caused by an offense:
(a) Committed in the "coverage territory" during the policy period; and
(b) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you. (emphasis added.)
The policy further provides that Potomac will pay medical expenses for "bodily injury" caused by an accident "[o]n premises you own or rent."
Section F of the Potomac policy sets forth the liability and medical expenses definitions. The term "bodily injury" is defined in Section F as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Occurrence," on the other hand, means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Personal injury" is defined as "injury, other than `bodily injury'", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication of material that violates a person's right of privacy.
The clear wording of the policy reveals that coverage extends to "bodily injury," *666 which occurs during the policy period and is caused by an "an accident." There is no requirement that Thibodeaux be engaged in the conduct of his business (Forrest Builders) when the bodily injury is sustained. On the other hand, "personal injury" caused by an offense "arising out of the conduct of your business" is covered under the policy. Coverage is afforded by the Potomac policy for personal injury, as defined in the policy, if the injury arises out of the conduct of the insured's business.
Based on the above, it is clear that Thibodeaux d/b/a Forrest Builders is a named insured under the terms of the Potomac policy and there is coverage for the injuries Dunn sustained, if the injury arose out of the conduct of the insured's business. A genuine issue of material fact remains as to whether Dunn's injury arose out of the conduct of Forrest Builder's business. Thus, Potomac was not entitled to judgment as a matter of law.

CONCLUSION
For these reasons, the judgment of the trial court in favor of Potomac and against Dunn, dismissing her demands at her cost, is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Potomac is cast for all costs.
REVERSED AND REMANDED.
NOTES
[1] The Pirates Harbor address is also known as 54409 Highway 433, Slidell, Louisiana.
[2] We note that the Potomac policy defines numerous terms, such as "bodily injury" and "personal injury" in non-traditional ways. Under the terms of the policy, those terms, among others, are not given their usual legal connotations.