GREMILLION, Judge,
dissenting.
| innovative Hospitality Systems, LLC, alleged in its petition that in March 2007, at least 108 of its checks were fraudulently presented for cashing at Abe’s Grocery in Lake Charles, Louisiana. The applicant, First Specialty Insurance Corporation, insured Abe’s. It filed a motion for summary judgment asserting that the cashing of these fraudulent checks was not covered by its policy. The trial court denied First Specialty’s motion. First Specialty sought supervisory writs from the judgment denying the motion for summary judgment. This court denied writs. First Specialty then sought relief from the Louisiana Supreme Court, which remanded the case for briefing, argument and a full opinion. Innovative Hospitality Systems, LLC v. Abraham, 10-1285 (La.11/5/10), 51 So.3d 1. In support of its motion, First Specialty attached a certified copy of the policy it issued to Abe’s. Abe’s opposed the motion, not on the basis that any genuine issue of material fact existed, but rather on the basis that the language of the First Specialty policy afforded coverage for its loss. The policy provides, “We will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily *746 injury or ‘property damage’ to which this insurance applies.” The policy defines “property damage” as:
“Property damage” means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur |yat the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that cause it.
For the purposes of this insurance, electronic data is not tangible property.
As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.
First Specialty contends that because Innovative Hospitality and the cross-claim plaintiffs are seeking to recoup funds withdrawn from Innovative Hospitality’s bank account, such transactions do not involve physical items; thus, the object of this suit is to recoup intangible things. Therefore, First Specialty asserts that its policy provides no coverage under the policy’s express definition of “property damage” as being limited to tangible things.
The trial court and the majority found that since Abe’s paid out cash on the fraudulent checks, this cash constitutes Innovative Hospitality’s loss; therefore, First Specialty was not entitled to summary judgment dismissing it from this action because it had failed to show that the policy did not provide coverage.
The term “tangible property” in such policies carries the same meaning as the civilian term “corporeal property.” See Massey v. Decca Drilling Co., Inc., 25,973 (La.App. 2 Cir. 12/7/94), 647 So.2d 1196, writs denied, 95-69, 95-411, 954117 (La.4/21/95), 653 So.2d 563 and 564. Louisiana Civil Code Article 461 reads, in pertinent part, “Corporeals are things that have a body, whether animate or inanimate and can be felt or touched.” First Specialty correctly argues that Innovative laHospitality and the co-defendant banks are seeking to recover incorporeals, that is amounts withdrawn from Innovative Hospitality’s bank account. Innovative Hospitality does not have actual dollar bills sitting in a bank; rather, it has a right to go to its bank and ask to withdraw in dollars an amount equal to its account balance.
In countering the trial court’s reasoning that Innovative Hospitality and the co-defendant banks are seeking reimbursement for the physical dollars that First Specialty’s insured, Abe’s, paid out on the fraudulent checks, First Specialty suggests that those dollars were not damaged or destroyed in any fashion so as to bring the dollar bills within the coverage of its insurance policy. Furthermore, First Specialty points out that Innovative Hospitality never had ownership of the actual dollar bills paid out by Abe’s on the fraudulent checks. Instead, the dollar bills were simply handed over by Abe’s to those cashing the fraudulent checks. Accordingly, First Specialty contends that the trial court’s reasoning for finding coverage was incorrect.
Innovative Hospitality, on the other hand, contends that its injury occurred when the fraudulent check and cash were exchanged at Abe’s. In Innovative Hospitality’s words, “The operative reality of negotiable instruments is that while Abe’s employee was reaching into its cash draw *747 er ... that employee was effectively reaching into Plaintiffs bank account.” I disagree. The Louisiana Commercial Laws, La.R.S. 10:1-101, et seq., govern the exchange of negotiable instruments. The first bank to take a negotiable instrument, even if it is also the payor bank, is defined as the Depositary Bank. La.R.S. 10:4-105(2). The “Payor Bank” is the bank that is the drawee of the draft. La.R.S. 10:4-105(3). Between those banks lie “Intermediary Banks.” La.R.S. 10:4-105(4). At every step along the path between the presentment of the check and the withdrawal from the payor’s account one finds duties imposed |4on those who receive the check. See La.R.S. 10:3-412, et seq. The funds the check represents are taken from the indorser’s account until the check is cleared. The funds from the drawer’s account are routed into the account of the last holder.
Until Abe’s bank presented the fraudulent check to Innovative Hospitality’s bank, and that bank then honored the check and debited Innovative Hospitality’s account, Innovative Hospitality still had the use of those funds. Innovative Hospitality did not lose cash, but the right to use its funds.
Innovative Hospitality makes the valid point that a check is also considered a corporeal. However, it is not making a claim for the damage to the check. It is making a claim for funds that were fraudulently withdrawn from its checking account.
It has been further suggested that because the policy states that First Specialty insures against “[l]oss of use of tangible property that is not physically injured,” the loss experienced by Innovative Hospitality is covered. I believe the “loss of use” coverage does not apply. Our colleagues on the first circuit held that “loss of use” coverage did not extend to compensate'a business for its employee’s embezzlement of funds. Jim Carey Dist. Co., Inc. v. Zinna, 589 So.2d 526 (La.App. 1 Cir.1991). I agree with that analysis.
CONCLUSION
The miscreants who stole and forged checks drawn on Innovative Hospitality’s account withdrew cash. The cash, however, was not what Innovative Hospitality lost. It lost the right to use its funds on deposit with its bank. The loss did not consist of tangible property. As such, First Specialty, as the insurer of Abe’s Grocery, does not afford Abe’s coverage for that loss. I would grant First Specialty’s application for writs and make that grant peremptory.